STATE OF WEST VIRGINIA *v.* LLOYD SISLER AND SCOTT SISLER

(No. 9088)

Submitted September 10, 1940. Decided November 12, 1940.

*Burnside & Hall,* for plaintiffs in error.

*Clarence W. Meadows,* Attorney General, *Kenneth E. Hines,* Assistant Attorney General, and *Melvin C. Snyder,* for defendant in error.

MAXWELL, JUDGE:

To a judgment of conviction of burglary and sentence of penitentiary confinement, the defendants, Lloyd and Scott Sisler, were awarded writ of error by this Court.

The prosecution was based on an indictment charging the defendants with breaking and entering in the night-time a chicken house being an "outhouse adjoining the dwelling house of Blanche Jordan and occupied therewith", and stealing chickens of the value of $30.00, the property of Howard Jordan.

The Jordan family lives in Preston County, West Virginia, near the West Virginia and Maryland State line. The defendants reside with their mother in the State of Maryland about one-half mile from the Jordan home.

On the night of April 3, 1939, twenty-seven chickens were taken from Jordan's chicken house, situated forty to fifty feet from the Jordan dwelling. The chickens were later found in a rock cave, located about one and one-half miles from the Jordan home and about one mile from the Sisler home, and on property of neither Jordans nor Sislers. The cave was off the public road leading past the Sisler home and the chickens were restrained within the confines of the cave or cliff by woven wire. There was also evidence that provision had been made for feeding and watering the chickens there.

The Jordans testified that the chickens were fed on the evening of the third of April, near the chicken house and that the following morning about eight o'clock discovery was made that the chickens were gone; that the door of the chicken house was usually kept closed and secured by a wooden latch or "button", and that on the morning of the fourth the door was closed; that when the door was shut the chickens had access to the building through a small opening near the floor; that there had

been a light snow fall that night and about ten o'clock the morning of the fourth after the snow had melted, tracks, apparently of two persons, were observed near the chicken house door, which, when traced, led in the direction of the Sisler home. It was the theory of the state that the theft had taken place some time before midnight and before much snow had fallen. The Jordans further testified that automobile tire tracks were observed in the road leading from the Sislers to a point near the rock cave; that the tracks were made by the same tread of tires as used on the Sisler car; that a double-bitted ax, dish pan and two chicken coops were found at the rock cave and that each of these articles was the property of the Sislers.

The defense was an alibi. Scott and his mother testified that they left home before dark on the evening of the third of April to attend a soil conservation meeting at Friendsville, Maryland, twelve miles from the Sisler home and that Lloyd remained at home; that they traveled in their own car to the home of Jasper Sisler, brother of defendants, and from there to Friendsville with Jasper in his car; that after attending the meeting they started home arriving there about 11:30 P. M.; that on their return they met Mrs. Lewis Vansickle, her son Everett, and daughter Mildred leaving the Sisler home and that Lloyd was in the house; that neither Scott nor Lloyd left the house the remainder of the night; and that snow began to fall about 11:00 o'clock and continued to fall until early morning.

Lloyd testified that soon after his mother and Scott departed for Friendsville, Mrs. Lewis Vansickle, her son and daughter came in and spent the evening with him listening to radio programs; that they went home about the time Scott and his mother were returning; and that he did not leave the house that night.

The Vansickles testified that Lloyd did not leave the house while they were there; that they went home about 11:30 and met Scott and his mother at the gate going into the Sisler property.

Lenore Sisler, daughter of Jasper, had been visiting in the defendants' home. She testified that she returned from her home with Scott and her grandmother to the latter's home about 11:30 that night, and that the Vansickles were leaving and Lloyd was at home.

Louis Vansickle had accompanied A. W. Jordan, father of Howard, to the conservation meeting. Both testified they saw Scott and his mother at the meeting.

The defendants and their mother deny ownership of the articles found at the cave and also deny that the car tracks testified to by the Jordans were made by the Sisler car.

Thus there was presented a sharp factual controversy for jury determination.

The first contention of the defendants is that they were wrongfully arrested in the State of Maryland, brought into West Virginia and tried in the Circuit Court of Preston County, and therefore that court had no jurisdiction of their person. This question was in no way raised before or at the trial, and from all that appears from the record, defendants without protest submitted themselves to the West Virginia court. In such instance where the accused, represented by counsel, enters a plea of not guilty, the trial court is not required to inquire whether the accused was properly brought within the jurisdiction of the court. *State* v. *McAninch,* 95 W. Va. 362, 121 S. E. 161. See also, *State* v. *Day,* 58 Iowa 678, 12 N. W. 733; *Ker* v. *The People,* 110 Ill. 627. 51 Am. Rep. 706; 6 C. J. S. Arrest, section 3, p. 574; *In Re Johnson,* 167 U. S. 120, 126, 17 S. Ct. 735, 42 L. Ed. 103.

The second point of defendants is that the verdict of the jury is not warranted by the evidence—that the evidence does not overcome every reasonable hypothesis of innocence. The circumstantial evidence adduced by the state points forcefully towards the guilt of the defendants, and the jury chose to believe that evidence rather than the alibi evidence. That was within their province.

In our consideration of the case for decision attention was given to the question of whether or not the chicken

house in the instant case was an "outhouse" adjoining a dwelling house, within the meaning of Code, 61-3-11. This question was not raised at the trial nor on writ of error, as was done in the case of *State* v. *Neff*, 122 W. Va. 549, 11 S. E. (2d) 171 decided at this term of court. The evidence herein as to the description, use and location of the building denominated a chicken house is unsatisfactory upon which to base an adjudication on this point. We therefore make no specific finding respecting the same, inasmuch as there must be a reversal on another ground.

A further point is made that there was prejudicial error in State's instruction number three, which is as follows: "The Court instructs the jury that there is no necessity in this case to show the absolute separation of the particles of wood, iron, etc., of the chicken house of Blanche Jordan, referred to in the indictment, or to the door thereof *in order to make the breaking and entering thereof by the defendants burglary;* but, if the jury believe from the evidence in this case, beyond a reasonable doubt, that the defendants raised the latch or pushed open the door of the said chicken house, which was closed, and entered the same with the intent to commit larceny therein at the time and in the manner charged in the indictment, then the jury should find the defendants guilty as charged." (Italics supplied)

The difficulty with this instruction lies in the italicized words "in order to make the breaking and entering thereof by the defendants burglary." The clearly implied meaning of these words is that the defendants did in fact break and enter Jordan's chicken house, and that the only question to be solved is whether the manner and motive of the breaking and entering constituted burglary. Authority need not be cited for the proposition that it is prejudicially erroneous for an instruction given by the court to the jury to contain language which is at least readily susceptible of the interpretation that the court was dealing with the matter as though an important factual issue had already been determined in a particular manner. The state would justify the giving of this instruction on the basis that the

same instruction was given and approved in the case of *State v. Shores,* 31 W. Va. 491, 7 S. E. 413, 13 Am. St. Rep. 875, cited in Lee's Criminal Trial in the Virginias, Vol. 2 (2d Ed.), section 952. In that case the defendant was charged with breaking and entering a storeroom with intent to commit larceny. The evidence disclosed that shortly after the door of the room had been closed and locked by the clerk, the defendant and his companions were seen to force open the door by pressing against it and to re-enter the store where they had been customers a little while before the clerk locked the door and left the room. The entry not being denied, no issue thereon arose, and the court properly stated to the jury that an actual breaking of the material in the door was not necessary "in order to make the breaking and entering thereof (the store) by the prisoner burglary." In the instant case the alleged entry of the chicken house by the defendants being denied by them, the basis of distinction between this case and the *Shores* case is plain. While the challenged instruction was in good form for the *Shores* case, it is in prejudicially bad form in the instant case.

The defendants' motion to set aside the verdict and grant them a new trial was grounded in part on after-discovered evidence. This approach was based principally on an affidavit of their sixteen-year-old nephew, Dawson Sisler, who averred that he is the person who entered the Jordan chicken house and stole the chickens, and that he did not disclose this fact to any person until after his uncles, the defendants, had been tried and convicted. After this affidavit had been filed, the affiant was called into court and carefully cross-examined respecting the subject matter of his affidavit. The trial court, considering both the testimony thus given by the boy and the surrounding circumstances, was not favorably impressed by the boy's effort to assume responsibility for the crime. Such is likewise the reaction of this Court to that matter. There was no error by the trial court in that particular.

By reason of the above discussed prejudicial error in State's instruction number three, we reverse the judgment,

set aside the verdict and remand the case to the circuit court for a new trial.

*Reversed and remanded.*