STATE OF WEST VIRGINIA
*ex rel.* CALVIN SUBLETT

*v.*

D. E. ADAMS, *Warden*
WEST VIRGINIA PENITENTIARY

(No. 12032)

Submitted May 17, 1960.          Decided June 21, 1960.

*Robert K. Kelly,* for relator.

*W. W. Barron,* Attorney General, *Fred H. Caplan,* Assistant Attorney General, for respondent.

BERRY, JUDGE:

This proceeding involves a petition for a writ of habeas corpus *ad subjiciendum* which was initially filed under the original jurisdiction of this Court on September 10, 1959, and on September 21, 1959, this Court entered an order refusing to grant the writ. The relator then petitioned the Supreme Court of the United States for a writ of certiorari which was granted on March 7, 1960. On April 19, 1960, the Supreme Court of the United States handed down its mandate vacating the judgment of this Court and remanding the case for proceedings not inconsistent with its opinion. *Sublett v. Adams,* 362 U. S. 143, 4 L. Ed 2d 612, 80 S. Ct. 527. In compliance therewith this Court entered an order on April 25, 1960, ordering that a writ of habeas corpus *ad subjiciendum* be issued, returnable May 17, 1960, and appointed counsel for the relator.

The relator was indicted at the October, 1946 term of the Circuit Court of Boone County, West Virginia, for the crime of forgery. On October 28, 1946, he pleaded guilty to the offense charged and was sentenced to be confined in the West Virginia State Penitentiary at Moundsville for an indeterminate term of from two to ten years. The sentence was suspended and the relator released on probation. On July 16, 1947, the relator having been found to have violated the terms of his probation, said probation was revoked and the original sentence imposed and relator was confined in the state penitentiary.

During his confinement in the penitentiary the relator required medical attention for an injury received in World War II. The proper medical atten-

tion could not be provided at the penitentiary hospital and the authorities at the penitentiary had the relator removed to the Fairmont State Hospital, Fairmont, West Virginia, from which hospital he was then transferred to the Veterans' Hospital at Aspinwall, Pennsylvania, for treatment. He was reconfined in the state penitentiary on July 8, 1949.

On October 31, 1949, the relator was again permitted to go to the Veterans' Hospital at Aspinwall, Pennsylvania. He was reconfined in the penitentiary on January 26, 1950. On March 10, 1950, he was again allowed to go to the Veterans' Hospital at Aspinwall and on March 20, 1950, was reconfined in the penitentiary. The relator contends that on each of these occasions he was told to return to the penitentiary and on each occasion he signed an agreement that he would return. A copy of the agreement dated October 31, 1949, signed by the relator, was filed with the papers in this case and it stated that the relator had been informed and fully understood that he was to be transferred to the Veterans' Hospital at Aspinwall, Pennsylvania, for medical attention and that it was further understood that upon the termination of his treatment there he was to return voluntarily to the West Virginia State Penitentiary to complete the remaining part of his sentence or until he was otherwise released by due process of law.

On May 16, 1950, the relator was again permitted to go to the Veterans' Hospital at Aspinwall, Pennsylvania for treatment and on this occasion the relator contends that he was not advised that he was to return to the penitentiary and was not requested to sign any agreement that he would return. He further contends that he was transported to the Veterans' Hospital by a representative of the Veterans' Administration, and upon their arrival at the Hospital, the Veterans' Administration Representative was advised by the hospital registrar that the hospital could not admit the patient if there was a detainer on him. It is the further contention of the relator that at the suggestion

of the Veterans' Administration Representative the registrar called the Secretary of the West Virginia Board of Control and was informed that there was no detainer for the return of the relator to the state penitentiary. Although the relator contends that he was released unconditionally from the penitentiary, he admits that there was nothing in writing to this effect in any of the files pertaining to this case showing whether or not he was so released.

It was agreed by the parties to this proceeding that the Veterans' Administration had a regulation in effect in 1950, providing the following: "A veteran under criminal charges, or in the custody of civil authorities, does not forfeit any right he may have to hospital or domiciliary care by the VA. However, the veteran must be in a position to accept hospital or domiciliary care if it is profferred to him by the VA. Charges will have to be dropped, and/or the veteran paroled or released unconditionally to the VA. If the veteran is paroled by the court, he may be accepted only if there is no obligation to restore him thereafter to the custody of the civil authorities. This does not preclude advising the civil authorities of the contemplated date of discharge when requested."

On June 24, 1950, the relator left the Veterans' Hospital and went to California, although at that time his sentence had not been fully served or shortened by any legal disposition of record. On October 26, 1950, the relator was arrested by California authorities, pursuant to extradition proceedings instituted by the State of West Virginia, under a fugitive warrant charging escape from the West Virginia State Penitentiary at Moundsville. The relator obtained a writ of habeas corpus *ad subjiciendum* and on November 1, 1950, a hearing was held in the Superior Court of the State of California in and for the County of Los Angeles. At the conclusion of that hearing, the relator was discharged and that decision was not appealed. It appears from the papers filed in this case that the relator was in the custody of the United States Marshal in

California at the time the extradition proceedings were instituted.

On October 3, 1958, the relator was arrested in the State of Ohio pursuant to extradition proceedings again instituted by the State of West Virginia. It appears that he had been confined in the State Penitentiary of Ohio for the commission of a felony and when he was released therefrom these proceedings were instituted. He was again charged with being a fugitive from justice and with the crime of escape from the State Penitentiary at Moundsville. A petition for a writ of habeas corpus was instituted by the relator in a proper court of Ohio. One of the grounds relied upon by the relator was that the decision of the California Court, from which there was no appeal taken, was *res judicata*. The writ of habeas corpus was refused by the Court of Ohio and relator was returned to the State of West Virginia and reconfined in the state penitentiary. It is from this confinement that the relator now seeks his release.

The relator has never been tried for escape and is not being held in the state penitentiary for that crime. It is true that he could not be confined or held in the penitentiary for such an offense without first having been indicted, tried, convicted and sentenced, but as stated above and disclosed by the allegations in the petition, as well as being clearly set out in the respondent's return, he is not now confined in the penitentiary for the crime of escape; he has never been indicted for or charged with escape and is legally confined for the crime of forgery for which he has been heretofore convicted and sentenced.

The motion of relator to proceed *in pauperis* was granted in both this Court and the Supreme Court of the United States. His motion for the appointment of an attorney to represent him was granted by this Court and he was also permitted to argue his own case upon his request when it was called for hearing and following a statement of facts by his attorney. The

mandate, pursuant to the writ of certiorari granted by the Supreme Court of the United States, not only ordered and adjudged that the judgment of this Court be vacated, but also ordered that costs in the amount of $100.00 be paid directly to the Clerk of the Supreme Court of the United States, and remanded the case to this Court for proceedings not inconsistent with the opinion of the Supreme Court of the United States. The *Per Curiam* opinion of the Supreme Court of the United States in the instant case, *Sublett v. Adams, supra,* reads as follows: "The motion to proceed *in forma pauperis* and the petition for writ of certiorari are granted. Petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Appeals of West Virginia. Petitioner charged that he was being held in prison without lawful authority and in violation of due process of law under the Fourteenth Amendment. The West Virginia Supreme Court of Appeals refused the writ without either a hearing or a response from the State. We hold that the facts alleged are such as to entitle petitioner to a hearing under *Herman v. Claudy,* 350 U. S. 116. The judgment is vacated and the case remanded to the Supreme Court of Appeals of West Virginia for proceedings not inconsistent with this opinion. The Chief Justice took no part in the consideration or decision of this case."

The case of *Herman v. Claudy,* 350 U. S. 116, under which the Supreme Court of the United States said the relator was entitled to a hearing, is not authority for granting a writ of habeas corpus under the facts in the case at bar. The only similarity between the *Herman* case and the case involved here is that both involved a petition for a writ of habeas corpus and both were refused by the highest courts in the states of Pennsylvania and West Virginia without a hearing. In the *Herman* case the petitioner alleged that his pleas of guilty to several crimes with which he was charged resulted from coercion and threats on the part of state officers, and after his arrest on said charges he was

held incommunicado for three days during which time a state trooper grabbed him by the neck and threatened to choke him if he did not confess. Also, that there were threats against the safety of his wife and daughter. Petitioner alleged that he finally confessed after 72 hours of intermittent questioning, and was later charged with approximately thirty offenses. Petitioner contended in his petition that he was not informed as to the seriousness of the charges, that he did not know that his pleas of guilty could result in the maximum sentence of 315 years, that he was never advised of his right to counsel or given the benefit of counsel and that although he pleaded guilty to all charges, he was innocent of all but one. Certainly in such a case, if the allegations were proved, the petitioner's constitutional rights, under the due process clause of the Fourteenth Amendment, had been clearly violated and he was entitled to a hearing thereon. However, in the instant case the petitioner, in both his petition for a writ of habeas corpus to this Court and his petition for a writ of certiorari to the Supreme Court of the United States, alleges no such facts but indicates that he was properly indicted for the crime of forgery to which he voluntarily pleaded guilty and was placed on probation, that he later violated his probation, which was revoked, and his sentence of from two to ten years was imposed and he was confined in the State Penitentiary at Moundsville to serve such sentence. It indicates that he had served only 35 months of the sentence and was being held in the custody of the warden of the penitentiary to complete his sentence at the time he filed his petition for a writ of habeas corpus. This Court, after the original petition was filed and a presentation of all the facts pertaining thereto, refused to grant the writ because the petitioner had not shown a legal right for the issuance of the writ.

The authorities of the state penitentiary allowed the petitioner to go to the Veterans' Administration Hospital at Aspinwall, Pennsylvania, for treatment, be-

cause he had served his country in the armed forces during World War II. He had been permitted to go on other occasions and had returned to the penitentiary. He had been treated on these occasions and admitted by an agreed statement that he had not been unconditionally released on these occasions. However, on the last occasion, on or about May 16, 1950, he failed to return to the penitentiary and went to California. He claims that he had been unconditionally released by the authorities to go to the Veterans' Hospital in Pennsylvania. The prison authorities had no authority to so release the petitioner and any attempt to do so was illegal and void. When he left the state penitentiary and failed to return, he became a fugitive from justice. *State ex rel. Hallanan v. Cyrus,* 83 W. Va. 30, 97 S. E. 412; *Hopkins v. North,* 151 Md. 553, 135 A. 367, 49 A.L.R. 1303.

Even the courts in this state are without inherent power to release unconditionally a prisoner who has been lawfully sentenced to and confined in the penitentiary. The questions of probation and of the suspension of a sentence to test the legality thereof are not involved in the case at bar. *Ex Parte Fisher,* 95 W. Va. 397, 121 S. E. 287; *State ex rel. Calandros v. Gore,* 126 W. Va. 614, 29 S. E. 2d 476. Only the Executive Branch of the Government has the power to grant pardons and paroles and to exercise clemency. There is no contention in this case that the relator was either granted a pardon or placed on parole from the penitentiary. *Ex Parte Fisher,* 95 W. Va. 397, 121 S. E. 287; *State ex rel. Calandros v. Gore,* 126 W. Va. 614, 29 S. E. 2d 476; *Ex Parte United States, Petitioner,* 242 U. S. 27, 61 L. Ed. 129, 37 S. Ct. 72.

Under the provisions of Section 2 of Article IV of the Constitution of the United States, any person charged with a crime in one state and found in another and who is a fugitive from justice should be returned by the state in which he is found to the state where he is charged with the crime to be either tried, or if already tried and convicted, to complete the serv-

ing of his sentence. 35 C.J.S., Extradition, §9; *Hughes v. Pflanz,* 138 F. 980, 71 C.C.A. 234.

When extradition proceedings were had in California in 1950, in order to have the relator returned to West Virginia to complete his sentence, the warrant issued by the Governor of California charged the relator with the crime of escape, and when the relator filed his petition for writ of habeas corpus, no reason was given by the Superior Court of California for releasing the relator and nothing was stated in the order except "Petition is granted". The petition for a writ of habeas corpus filed in California alleges that he could not be guilty of the crime of escape from the State Penitentiary at Moundsville, West Virginia, by leaving the Veterans' Hospital in the State of Pennsylvania. It is not necessary for all of the acts to have been committed in West Virginia in order to complete such a crime. If the relator left the state penitentiary with the intent not to return before he went to the Veterans' Hospital in Aspinwall, Pennsylvania, he would no doubt be technically guilty of the crime of escape from the West Virginia Penitentiary. See *Strassheim v. Daily,* 221 U. S. 28, 55 L. Ed. 735; *Hopkins v. North,* 151 Md. 553, 135 A. 367, 49 A.L.R. 1303; *Ex parte Morgan,* 86 Cal. App. 2d 217, 194 P. 2d 800. However, it was not necessary or proper for the Court in California to even consider whether or not the relator was guilty or innocent of the crime of escape, because the papers were sufficient and there was no question as to identity. Official Penal Code of California, Part 2, Title 12, Chapter 4, Section 1553.2, (West's Annotated California Codes, Vol. 51, Section 1553.2); *Ex parte Backstron,* 98 Cal. App. 2d 500, 220 P. 2d 742. Then too, he had been charged with a crime, sentenced to the penitentiary, had neither been pardoned nor paroled, was illegally at large and a fugitive from justice at the time of his apprehension in California. Application of Daily, 171 A.C.A. 898, 341 P. 2d 364; *Boyles v. Hudak,* 120 W. Va. 431, 199 S. E. 5. Regardless of whether or not the Court in

California made proper disposition of the proceeding before it in 1950, this could not affect in any way the decision of the Court in the State of Ohio in 1958, when it properly refused to grant a writ of habeas corpus to the relator and returned him to the State of West Virginia under extradition proceedings, to complete the serving of his sentence on the charge of forgery to which he had pleaded guilty and been sentenced to the penitentiary. The releasing of the relator on his petition for a writ of habeas corpus in California was not *res judicata* and the Ohio Court was not bound in any way by the habeas corpus proceeding in California. Neither the parties nor the facts were the same at the two proceedings and each deals only with the particular process before it. 39 C.J.S., Habeas Corpus, §104; *State v. Shears,* 119 Wash. 275, 205 P. 417; *Ex Parte Silverman,* 69 Ohio App. 128, 42 N. E. 2d 87. (Appeal dismissed, *In re Silverman,* 140 Ohio State 335, 43 N. E. 2d 238).

It is the contention of the relator that he should be released under his petition for a writ of habeas corpus because the time in which the original sentence should have been served has expired. With this contention we do not agree because the relator should not be allowed to take advantage of a situation to which he was a party or that he created himself. He was not only in the same situation as if he had escaped from custody when he failed to return to the state penitentiary from the State of Pennsylvania, but it is well settled by the weight of authority that the sentence had not been satisfied during the period of his absence. 15 Am. Jur., Criminal Law, §512; 19 Am. Jur., Escape, Prison Breaking, and Rescue, §22; *Ex Parte Fisher,* 95 W. Va. 397, 121 S. E. 287; *Hopkins v. North,* 151 Md. 553, 135 A. 367, 49 A.L.R., 1303.

Even if the extradition proceedings in the State of Ohio were improper and the relator illegally or forcibly returned to the State of West Virginia, it would not constitute grounds for his release under his petition for a writ of habeas corpus, because he is within the

jurisdiction of the state in which he has been charged with a crime, sentenced to the penitentiary and is now serving that sentence. See Cases Collected, 165 A.L.R., 947; *State v. McAninch*, 95 W. Va. 362, 121 S. E. 161; *State v. Sisler*, 122 W. Va. 594, 11 S. E. 2d 534; *Frisbie v. Collins*, 342 U. S. 519, 96 L. Ed. 541.

For the reasons stated herein, the writ is discharged and the relator remanded to the custody of the Warden of the West Virginia State Penitentiary at Moundsville.

*Writ discharged.*