WEST VIRGINIA JUDICIAL INQUIRY COMMISSION

*v.*

DENVER D. CASTO

(No. 14586)

Decided July 17, 1979.

Rehearing Denied November 8, 1979.

*Charlotte R. Lane, Fowler, Paterno & Lane,* for complainant.

*Michael C. Allen* for defendant.

MCGRAW, JUSTICE:

This complaint by the Judicial Inquiry Commission charges Magistrate Denver D. Casto with "backdating"[1] records in violation of Canon 2A of the Judicial Code of Ethics. Specifically, Magistrate Casto is charged with signing "information for warrant" and "warrant for arrest" forms eight months after the arrest of John G. McGuffey. Magistrate Casto admitted signing the predated records but denied that his action was a violation of the Canon of Ethics. The Judicial Review Board concluded that the signing of the informations and warrants did constitute a violation of Canon 2A, but, in view of the circumstances, recommended that the Magistrate be privately reprimanded and ordered to pay court reporter costs.[2] We are asked to adopt the Board's recommendations which we cannot do.

On June 21, 1977, the complainant, John G. McGuffey, was stopped by two Kanawha County Deputy Sheriffs for traffic violations. The deputies wrote out traffic citations for the violations, which Mr. McGuffey apparently refused to sign, although there is some dispute on this matter.[3] Mr. McGuffey was then brought forthwith before Magistrate Denver D. Casto, the respondent, in accordance with W. Va. Code § 17C-19-3.

There is a dispute in the evidence as to whether Mr. McGuffey was found guilty of the violations or plead

---

[1] Although the complaint charges Magistrate Casto with "backdating" records, there is no allegation that he tampered with the dates on the records. Rather, "backdating" in this instance refers to the action of the Magistrate in signing predated records.

[2] Magistrates are classified as "judges" under the Judicial Code of Ethics and are subject to all Canons of Ethics. Canon 7, Judicial Code of Ethics (readopted July 16, 1976).

[3] Although Mr. McGuffey insists that he did not refuse to sign the citations, his signature does not appear on either ticket.

guilty.[4] Magistrate Casto treated the matter as a guilty plea and instructed Mr. McGuffey that he had a right to appeal to the circuit court. Mr. McGuffey paid the magistrate assistant $19.00, which was recorded as a fine and costs. No warrant for arrest was issued at the time, the procedure with regard to guilty pleas in traffic violation cases being to allow the accused to plead on the citations. Magistrate Casto testified that warrants were issued only when the defendant demanded a hearing or indicated that he intended to appeal the traffic conviction.

On June 27, 1977, Mr. McGuffey returned to the magistrate offices and indicated to the judge that he wished to appeal his case to the Circuit Court of Kanawha County. The appeal was granted and the fines and costs already paid were applied to the appeal bond. At that time Magistrate Casto instructed the magistrate assistant to prepare the file for appeal, a procedure which included filling out the warrants. The information for warrant and the warrant for arrest forms were filled out and put in the file dated June 21, 1977, but the deputies and the judge did not sign them until February or March of 1978. The reasons given for the delay in signing included the press of business, several changes in location of offices and the inability to reach the arresting deputies. On September 14, 1977, Mr. McGuffey filed a complaint with the Judicial Inquiry Commission, which investigated the matter.

Magistrate Casto testified that he was unaware of any impropriety involved in backdating warrants. He apparently did not believe the warrants were essential to enable him to take the guilty plea and thought their presence in the file was a mere technical requirement of perfecting an appeal. The Judicial Review Board con-

---

[4]The Judicial Review Board did not resolve this factual dispute but chided Magistrate Casto for not clearly reflecting in his records the taking of a guilty plea. Since the Board apparently did not accept Mr. McGuffey's account of what occurred when he was brought before Magistrate Casto, we will treat the proceeding as the tender of a guilty plea.

cluded that the judge was guilty as charged and recommended a private reprimand.

First, we should say that criminal actions in magistrate court are instituted by the issuance of a warrant. W. Va. Code § 50-4-2. Without the warrant an individual may neither be tried nor enter a plea to a criminal charge. Even where a warrantless arrest is permitted, the person arrested must be taken before a magistrate without delay, and a complaint must be filed and a warrant issued immediately. W. Va. Code § 62-1-5.

The judge erred in signing the predated informations and warrants. The backdating was characterized by Magistrate Casto as a *nunc pro tunc* order. *Nunc pro tunc* entries are usual only in situations where something that actually occurred on a prior date was omitted from the record by inadvertence or mistake, but such an order may not be made where the entry does not reflect something that actually occurred on the date indicated. *Bloyd v. Scroggins,* 123 W. Va. 241, 15 S.E.2d 600 (1941). The actions of Magistrate Casto, in signing the warrants, gave the impression that the forms were signed on June 21, 1977, when they were not in fact signed until February or March of the following year. The signing of the predated arrest warrants did not comform to the requirements of a valid *nunc pro tunc* entry, and constituted error.

We are asked to decide whether the judge's action in signing predated warrants constitutes a violation of Canon 2A of the Judicial Code of Ethics. We conclude that these erroneous actions of Magistrate Casto do not rise to the level of a violation of that Canon.[5]

---

[5]While we are not prepared to say how egregious error must be to warrant disciplinary action, we note one example of judicial conduct which might be chargeable under our Judicial Code of Ethics. In overruling a defense objection to an allegedly unconstitutional instruction in a criminal trial, a Montana judge met defense counsel's offer to provide federal cases supporting his objection with the statement, "You can give those to the Supreme Court." *Sandstrom v. Montana,* 47 U.S.L.W. 4719 (June 19, 1979). To us, this statement imports an intentional disregard of and failure to consider and comply with the law.

The sanctions provided by this Court upon a finding that a member of the judiciary has violated one or more of the Canons include admonition, private reprimand, public censure and temporary suspension from duties or fine or both.[6] Undeniably, the sanctions, if not penal, are punitive in nature and should be strictly construed in favor of the party charged with violating the Canons. *Cf. Hall v. Norfolk & W. R. Co.* 44 W. Va. 36, 28 S.E. 754, 41 L.R. A. 669, 67 Am. St. Rep. 757 (1897).

Canon 2A, which the judge is charged with violating, provides:

> "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Other jurisdictions have interpreted this Canon as prohibiting a variety of judicial conduct, including the sexual conduct of a judge in his private life, *In re Lee,* 336, So.2d 1175 (Fla. 1976); the use of vulgar and obscene language and gestures by a judge in chambers and in open court, *Geiler v. Commission on Judicial Qualifications,* 10 Cal.3d 270, 515 P.2d 1, 110 Cal. Rptr. 201 (1973); the use of the contempt power and abusive language to intimidate counsel and to deny defendants their right to counsel, *Cannon v. Commission on Judicial Qualifications,* 14 Cal.3d 678, 537 P.2d 898, 122 Cal. Rptr. 778 (1975); the involvement of a judge in a real estate transaction requiring city approval, *In re Foster,* 271 Md. 449, 318 A.2d 523 (1974); the failure of a judge to hold proceedings in open court, *In re Holder,* 74 N.J. 581, 379 A.2d 220 (1977); the signing by a judge of orders award

[6]Order of the Supreme Court of Appeals, July 16, 1976.

[7]Other examples of conduct forbidden by Canon 2A are found in the following cases; *Spruance v. Commisssion on Judicial Qualifications,* 13 Cal.3d 778, 532 P.2d 1209, 119 Cal. Rptr. 841 (1975); *Dacey v. Connecticut Bar Ass'n.,* 170 Conn. 520, 368 A.2d 125 (1976); *Scogin v. State,* 138 Ga. App. 859, 227 S.E.2d 780 (1976); *In re Larkin,* 368 Mass. 87, 333 N.E.2d 199 (1975); *In re Troy,* 364 Mass. 15, 300 N.E.2d 159 (1973); *In re Del Rio,* 400 Mich. 665, 256 N.W.2d 727 (1977); *In re Duncan,* 541 S.W.2d 564 (Mo. 1976); *In re Dandridge,* 462 Pa. 67, 337 A.2d 885 (1975).

ing attorney's fees to another sitting judge, *In re Sisemore*, 271 Or. 743, 534 P.2d 167 (1975).[7] We do not suggest that we would decide these or similar cases in the same manner nor that these examples present the only possible violations of Canon 2A. Rather, we look to these case decisions for guidance in this relatively new field of law and as an aid in interpreting Canon 2A, and we note that none of the jurisdictions construing that provision have applied it in circumstances analogous to those before us.

The closest we come to finding a case presenting a factual situation similar to that before us is in reading *In re Conda*, 72 N.J. 229, 370 A.2d 16 (1977), in which a surrogate court judge was censured for falsifying court records by altering the designation of bank depositories in orders. While falsifying court records could be an act not far removed from the action complained of here, it must be noted that falsification anticipates an intent to deceive and a knowledge of the untruth being perpetrated. Here there is no allegation that the judge falsified the warrants nor that he intended to do so. In fact, the record reveals that Magistrate Casto's intent was not to deceive or to injure Mr. McGuffey by signing the predated warrants but rather to benefit Mr. McGuffey by providing him with documents necessary for his appeal.

We believe that Canon 2A is primarily designed to control the conduct of a judge in his personal affairs and that Canon 3 governs his conduct in the performance of his official duties. We also recognize that there may be areas of conduct where the two Canons may overlap, such as where the conduct of the judge may involve a violation of some criminal law that bears directly or indirectly on his judicial duties. Here, however, we are confronted with a charge that is non-criminal in nature and relates only to the magistrate's performance of his official duties.

Magistrate Casto was apparently under the impression that a defendant appearing before him on a traffic citation could waive the requirement for a warrant by pleading guilty to the charge stated on the traffic ticket.

He evidently believed that under such conditions the warrant was necessary only to complete the file and to enable the defendant to prosecute an appeal in the circuit court. He was reinforced in this belief by the fact that it was standard procedure in the magistrate court to accept guilty pleas in "forthwith" arrest cases on the citations alone and to issue warrants only when the defendant demanded a hearing or indicated that he intended to appeal. Proceeding under this belief, it is not difficult to understand that the judge intended nothing improper in signing a predated warrant.

It appears from the record that Magistrate Casto sought to comply faithfully with the duties he understood the law to impose upon him. He agreed to remain in his office at the request of the arresting officers past 5:00 p.m. in order that Mr. McGuffey might be brought before a magistrate without undue delay.[8] Upon Mr. McGuffey's appearance, the judge informed him of his options under the Code. Upon being informed that Mr. McGuffey intended to appeal, Magistrate Casto immediately reviewed the file and instructed the magistrate assistant to fill out the information and warrant forms and to obtain the signatures of the deputies in order to complete the file and facilitate the appeal. Fines and costs already paid were applied to the appeal bond.

We detect no intentional misconduct or disrespect for the law in Magistrate Casto's actions. It appears that he complied with the law as he perceived and understood it. The record reveals no evidence that the judge intended to deny a defendant his rights or to circumvent the requirements of the law. His motivation in signing the predated warrants appeared to be to see that Mr. McGuffey received a proper appeal. There is no evidence that the judge's conduct brought the integrity of the judiciary into disrepute in the public's eye.

---

[8]At the time of Mr. McGuffey's arrest, we had not yet enunciated the rule that a magistrate must be available to arrested persons at all times of the day or night. *State v. Mason*, ____ W. Va. ____, 249 S.E.2d 793 (1978).

We cannot say that in this instance the judge has engaged in intentional conduct deserving of punishment under Canon 2A. We do not believe that the conduct complained of here was properly charged under Canon 2A because it related solely to the conduct of his judicial office and should have been charged under Canon 3. We have not been able to find any case analgous to the one before us where a magistrate, a non-lawyer, was censured under the Judicial Code of Ethics for committing what might be termed an error in proper legal procedure. The cases previously cited generally involved judicial conduct that contained an element of willful or intentional misconduct rather than a legal oversight. We do not believe, however, that Canon 2A or Canon 3 was designed to censure judicial acts that are merely erroneous but not committed in bad faith to willfully prejudice the rights of a party.

Canon 2A should not be used as a "catch all" to charge and dispose of any unseeming conduct which cannot be said to violate any of the other Canons of Ethics. The machinery of the Judicial Inquiry Commission exists for the serious purpose of disciplining errant judges. To permit the judiciary to be charged under such a "catch all" provision for any conduct whatsoever would be to invite frivolous charges based on personal, political or vindictive motivations rather than charges based on improper conduct.

Finally, we view the power to censure or discipline judges as provided by Article 8, § 8 of the West Virginia Constitution to be consonant with the provisions of Article 3, § 2 which provides that "[a]ll power is vested in, and consequently derived from, the people. Magistrates are their trustees and servants, and at all times amenable to them." By the very nature of the administrative procedure established by this Court under the Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, any action taken by this Court on a recommendation from the Judicial Review Board must be by public order. Thus, the distinction between private reprimand and public censure is of little meaning.

Therefore, we feel that a public official engaged in the administration of justice and found to have violated the standards of conduct to which the judiciary is held should not be reprimanded privately out of the hearing of the public. Rather, if a judge's conduct is sufficiently serious to merit rebuke, it should be known publicly, so that the people whom he serves may be made aware of his conduct, and the constitutional provision may be vindicated.

For the reasons stated above, we conclude that when a judge, with no intent to prejudice the rights of a party, makes a legal error, his act does not constitute a violation of Canon 2A or Canon 3 of the Judicial Code of Ethics. Charges relating to a judge's performance of his official duties should be brought under Canon 3 of the Judicial Code of Ethics. Magistrate Casto's conduct does not rise to the level of a Canon 2 or Canon 3 violation, therefore, we dismiss the complaint of the Judicial Inquiry Commission and exonerate the magistrate of the charges against him.

*Complaint dismissed;
judge exonerated.*