344 S.E.2d 396

**In the Matter of Magistrate Johnny MENDEZ.**

**No. 16799.**

Supreme Court of Appeals of West Virginia.

Nov. 21; 1985.

Dissenting Opinion April 4, 1986.

J. Robert Rogers, Madison, for appellant.

Pepper & Nason, Andrew S. Nason, Charles R. Garten, Charleston, for Counsel for Judicial Inquiry Committee.

McHUGH, Justice:

This disciplinary proceeding is before this Court pursuant to Rule III.D. of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates. In particular, the West Virginia Judicial Hearing Board, in July 1985, recommended to this Court that Johnny Mendez, a Magistrate in Logan County, West Virginia, be publicly censured. This Court has before it the findings of fact and conclusions of law of the Judicial Hearing Board, all other matters of record and the briefs of counsel.

I

On November 23, 1982, Mark Craddock, an 18-year-old student at Sharples High School in Logan County, was disciplined by Erskine T. Davis, a teacher, for various transgressions of school rules. Later that day, while driving home, Davis' automobile was struck by a shot fired from a gun. Thereafter, Mark Craddock was arrested in connection with the shooting. He entered a plea of guilty before Magistrate Mendez

to the misdemeanor offense of destruction of property. *W. Va. Code,* 61-3-30 [1975].

On November 30, 1982, Mendez sentenced Craddock upon the conviction to 60 days in jail, which sentence, in view of Craddock's status as a high school student, was to be served during weekends. In addition, Mendez imposed a fine upon Craddock and directed him to make restitution to Davis for the damage to Davis' automobile.

In February 1983, before Craddock had completed the serving of his sentence, Craddock's father told Mendez that Mark Craddock suffered from a long-time illness and that the jail sentence was exacerbating Mark Craddock's condition.[1] Thereupon, Mendez asserted that an attempt was made by Mendez to contact the circuit judges of Logan County and the Logan County prosecuting attorney, in an effort to determine whether he, as magistrate, could suspend the Craddock sentence. Upon failing to reach the above officials, Mendez talked to an assistant prosecuting attorney of Logan County who told Mendez that the assistant prosecutor was unable to find any law which would preclude Mendez from suspending the Craddock sentence. Mendez entered an order suspending Mark Craddock's jail sentence.[2]

At a hearing before the Judicial Hearing Board, Mendez testified that he suspended the sentence in good faith, (1) because of the above-described statement of the assistant prosecuting attorney, and (2) because Mendez knew Mark Craddock's father (a local conservation officer) to be a trustworthy man.[3]

Nevertheless, asserting that the suspension of Craddock's sentence was improper, Davis (the victim of the shooting incident) filed a complaint against Mendez with the West Virginia Judicial Investigation Commission.

Determining that Mendez, in suspending the sentence, had violated the West Virginia Judicial Code of Ethics, the Commission found probable cause for the filing of a complaint with the Judicial Hearing Board. *See* Rule II.B. of the Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates.

The Judicial Hearing Board, in July 1985, found that Mendez had violated Canon 3 A.(1) of the Judicial Code of Ethics (with regard to the duty of a judge to be faithful to and competent in the law) because Mendez, as magistrate, had no power to suspend the sentence.[4] Furthermore, the Board found that Mendez had violated Canon 3 A.(4) of the Judicial Code of Ethics (with regard to the duty of a judge to refrain from *ex parte* communications concerning a proceeding) because Mendez, after conferring with Mark Craddock's father, had suspended the sentence without

---

**1.** At the hearing before the Judicial Hearing Board, Mark Craddock's father testified that his son had a "hydrocele" problem which caused a swelling of his son's testicles. Craddock's father testified: "I don't [know] if it's from ... being in jail, being nervous or the condition of the beds or what but [Mark Craddock] told me he said ['] I just don't think I can stand it anymore[']. He says [']it's killing me[']. You can tell from the swelling he was having pain."

**2.** It should be noted that in addition to the February 1983 suspension of the sentence, the record indicates that Mark Craddock was excused by Mendez from serving jail time for the weekend of January 28–30, 1983.

**3.** By memorandum dated January 24, 1985, the Chief Circuit Judge of Logan County informed magistrates in that county that:

"[i]f you (the magistrate) sentence a person to 30, 60, etc., days in the county jail, that is the *end* of it as far as the magistrate is con-

cerned." The burden for application of relief (work release or probation) falls upon the defendant or the defendant's attorney, *not* the magistrate.

**4.** The Judicial Hearing Board, in its conclusions of law, stated:

Magistrate Mendez was uncertain as to whether he had legal authority to suspend the *Craddock sentence. He failed to secure such* advice from his circuit judges who were supposedly unavailable or the Administrator's Office of the Supreme Court, when no urgency existed. Instead, Magistrate Mendez sought and relied upon the advice of [the assistant prosecuting attorney]....

The fact that *Magistrate Mendez did rely* upon the advice of the Assistant Prosecuting Attorney and believed in good faith that he could suspend a sentence are mitigating circumstances.

affording to interested persons notice or an opportunity to be heard.[5]

The Judicial Hearing Board recommended to this Court that Mendez be publicly censured.

## II

The Supreme Court of Appeals of West Virginia has the authority, under *W. Va. Const.* art. VIII, § 8, to "censure, suspend or retire judges, justices, or magistrates for violating the Code of Ethics." *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427, 428 (1980). Pursuant to that authority, this Court adopted, in 1976, the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates. Rule I.A., as amended, provides:

> The purpose of these rules is to provide for the creation of a Judicial Investigation Commission to receive and investigate complaints filed against Judges, and where probable cause exists to file charges before the Judicial Hearing Board; and to create and provide procedures and authority for the Judicial Hearing Board to hear such charges and to make recommendations as to appropriate disciplinary action which may be appealed to the West Virginia Supreme Court of Appeals.

In syllabus point 4 of *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983), we held that "[u]nder Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'" Furthermore, in syllabus point 1 of *West Virginia Judicial Inquiry Commission v. Dostert, supra*, we held: "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the

Judicial Review Board [now 'Judicial Hearing Board'] in disciplinary proceedings."

We stated in syllabus point 2 of *West Virginia Judicial Inquiry Commission v. Casto*, 163 W.Va. 661, 263 S.E.2d 79 (1979), that "[c]harges relating to a judge's performance of his official duties should be brought under Canon 3 of the Judicial Code of Ethics." This proceeding concerns Magistrate Mendez's performance of his official duties, i.e., the sentence of Mark Craddock upon Craddock's conviction of destruction of property. The provisions in question of Canon 3 provide:

A. Adjudicative Responsibilities.

(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.

. . . .

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. . . .

The issue in this proceeding is whether, by clear and convincing evidence, Magistrate Mendez violated Canon 3 of the Judicial Code of Ethics in suspending the sentence of Mark Craddock.

First, we note that a magistrate in West Virginia has no power to suspend a sentence imposed in a criminal case. The authority of a magistrate to act in a criminal case is derived from the Constitution of this State and by statute, *W. Va. Const.* art. VIII, § 10; syl. pt. 1, *State ex rel. Moats v. Janco*, 154 W.Va. 887, 180 S.E.2d 74 (1971); *State v. Younger*, 130 W.Va. 236, 238, 43 S.E.2d 52, 53 (1947); *State v. McKain*, 56 W.Va. 128, 131, 49 S.E. 20, 21 (1904), and no constitutional or statutory provision in West Virginia presently confers upon mag-

---

**5.** The Judicial Hearing Board, in its conclusions of law, stated: "Magistrate Mendez permitted Paul Craddock, father of Mark Craddock, to confer with him relative to suspending his son's sentence due to medical problems. Thereafter,

Magistrate Mendez on his own initiative prepared and executed a suspension order . . . without notice to any parties of interest or a hearing thereon."

istrates the authority to suspend a sentence imposed in a criminal case. In particular, such authority is not conferred upon magistrates by the statutes (*W. Va. Code*, 62-12-1 [1975], and *W. Va. Code*, 62-12-3 [1977]) cited by the parties. Those statutes are concerned with placing criminal defendants upon probation. Probation is not involved in the proceeding before this Court.[6]

In other jurisdictions, it has generally been held that "in the absence of statutory authorization, a criminal trial court, after passing sentence of fine or imprisonment, has no inherent power or authority to suspend or cancel operation of all or part of the sentence for an indefinite period, so as to relieve the accused from the suffering imposed." Annot., 73 A.L.R.3d 474, 482 (1976).[7] Specifically, courts have held that "a municipal, magistrate, or mayorial court has no inherent authority to suspend indefinitely the execution of all or any part of its sentence." Annot., 73 A.L.R.3d 474, 496 (1976). *See also* annot., 141 A.L.R. 1225 (1942).

In *Richards v. Crump*, 260 S.C. 133, 136, 194 S.E.2d 575, 576 (1973), the Supreme Court of South Carolina stated that "magistrates may not suspend sentences." Similarly, in *Pete v. State*, 379 P.2d 625 (Alaska 1963), the Supreme Court of Alaska indicated that, in the absence of statutory authority, magistrate courts have no power to suspend "any portion" of a sentence in a criminal case, "and the attempted exercise of that power [is] without legal effect." 379 P.2d at 626.

Magistrate Mendez, thus, committed a legal error in suspending the sentence of Mark Craddock. Moreover, even if Mendez had had the authority to suspend the sentence, he acted in this case, as the record before us reveals, upon the unverified, *ex parte* representation of Craddock's father that the jail sentence was harmful to Mark Craddock's medical ailment. The record indicates that the ailment was not disclosed to Mendez at the time the sentence was imposed. Under the circumstances of this case and in view of the fact that Mark Craddock was serving his sentence upon weekends only, we concur with the statement of the Judicial Hearing Board that "no urgency existed" to suspend the sentence. Mark Craddock could have sought relief from the sentence in the Circuit Court of Logan County.

The attempts of Mendez to contact various officials for authorization to suspend the sentence are commendable, and, as we held in syllabus point 3 of *West Virginia Judicial Inquiry Commission v. Dostert, supra:* "An error of judgment, absent proof of improper motive, is not grounds for discipline under Canon 3A of the Judicial Code of Ethics." *See also* syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Casto, supra.* We recognized, however, in syllabus point 2 of *In re Pauley*, 173 W.Va. 228, 318 S.E.2d 418 (1984), that "[t]he deliberate failure to follow mandato-

---

**6.** With respect to probation, *W. Va. Code*, 62-12-4 [1943], entitled "Probation of offenders convicted in courts other than courts of record," provides:

> Whenever any person is found guilty of, or pleads guilty to, a crime in a court which is not a court of record, he may, at any time thereafter, file with the court of record to which an appeal would lie, or with the judge thereof in vacation, his petition in writing, together with a transcript of the docket of the court in which he was convicted, requesting that he be placed on probation. Upon the filing of such petition and transcript, said court of record or the judge thereof, shall have power to suspend the execution of the sentence of the lower court and to release the petitioner on probation upon such conditions as to said court or judge may seem fitting.

The "suspending" of a sentence in the context of the proceeding before this Court is not the same as "suspending" a sentence in the context of probation. *See Richards v. Crump*, 260 S.C. 133, 137, 194 S.E.2d 575, 576 (1973).

*Compare, e.g.,* *W. Va. Code*, 60A-4-401(c) [1983], which, in conjunction with *W. Va. Code*, 60A-4-407 [1971], provides for probation in certain misdemeanor cases arising under the West Virginia Uniform Controlled Substances Act.

**7.** *See also* syl. pt. 1, *State ex rel. Calandros v. Gore*, 126 W.Va. 614, 29 S.E.2d 476 (1944), and syl. pt. 2, *Ex Parte Fisher*, 95 W.Va. 397, 121 S.E. 287 (1924), holding that "[t]he courts of this state have no *inherent* power to suspend a lawful sentence imposed as punishment for crime, except for short periods in which proceedings may be had to test the legality of the judgment." (emphasis added)

ry criminal procedures constitutes a violation of the Judicial Code of Ethics."

■ After having made an independent evaluation of the record and the recommendation of the Judicial Hearing Board, we are of the opinion that the action of Magistrate Mendez is sufficiently egregious to warrant public censure. We hold that where a magistrate sentenced a defendant to 60 days in jail, to be served upon weekends only, upon the misdemeanor offense of destruction of property, and the magistrate subsequently suspended the sentence, partially served by the defendant, without lawful authority and upon the *ex parte* representation of the defendant's father that the sentence was harmful to a previously undisclosed medical ailment of the defendant, the magistrate, in suspending the sentence, violated Canon 3 of the West Virginia Judicial Code of Ethics. *Cf.* syl. pts. 2 and 4, *State ex rel. Sublett v. Adams*, 145 W.Va. 354, 115 S.E.2d 158 (1960), *cert. denied*, 366 U.S. 933, 81 S.Ct. 1652, 6 L.Ed.2d 392 (1961).

Upon all of the above, this Court finds that the record contains clear and convincing evidence that Magistrate Mendez violated Canon 3 of the Judicial Code of Ethics. We, therefore, adopt the recommendation of the Judicial Hearing Board that Mendez be publicly censured.

Complaint sustained.

NEELY, Justice, dissenting:

I dissent because the majority's opinion mistakes the law and effectively ignores the day to day conditions under which our magistrates work. The majority holds that Magistrate Mendez violated Canon 3 A(4) of the *West Virginia Judicial Code of Ethics* because he suspended Mark Craddock's sentence after conferring *ex parte* with Mark Craddock's father, and without affording notice or an opportunity to be heard to interested persons.

The facts in this case do not support this holding. Mark Craddock came to Magistrate Mendez and explained that jail exacerbated his son's medical condition. Magistrate Mendez promptly notified the assistant prosecuting attorney of Logan County and related what the father had told him. The assistant prosecutor told Magistrate Mendez that there was no law that would preclude him from suspending the sentence. Magistrate Mendez suspended the sentence.

The proper way to characterize these events is as follows: 1) The father made a speaking motion to Magistrate Mendez requesting him to suspend the son's sentence; 2) Magistrate Mendez notified the adversary party (e.g. the State in the person of the Logan County assistant prosecutor); 3) The adversary party had no objections to the motion; and 4) Magistrate Mendez granted the motion. Under this view Magistrate Mendez may well have committed a legal error in suspending the sentence, but he should not be subject to discipline for engaging in *ex parte* communication. Furthermore, this characterization of the facts is more consistent with the informality and openess of magistrate courts. Under the majority's definition of *ex parte* communication, magistrates must duck into a bathroom each time they see a litigant coming down the hall!

Not only do I quarrel with the majority's holding in this case, but also I must dispute the standard of review the majority casually introduces in their opinion. The majority suggests that the standard of review for a magistrate's behavior is conduct "... sufficiently egregious to warrant public censure." I will not try to flesh out what this somewhat novel, if nebulous, standard means. Instead, I will simply note that Canon 3 A of the *West Virginia Judicial Code of Ethics* mandates a different standard. A legal error by a judge does not constitute a violation of Canon 3. *In re Greene*, 173 W.Va. 406, 317 S.E.2d 169 (1984) (refusal to issue backfire warrants). *See also* Syl. Pt. 1, *West Virginia Judicial Inquiry Commission v. Casto*, 163 W.Va. 661, 263 S.E.2d 79 (1979) (magistrate who makes a legal error does not violate West Virginia Judicial Code of Ethics); *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980) (absent proof of an improper motive, a circuit court judge's exercise of discre-

tionary power, though wrong, does not violate Canon 3 A).

A Canon 3 A violation requires that the judge or magistrate *intentionally* disregard the law before he may be censured. The "sufficiently egregious to warrant public censure" standard that the majority appears to apply in this case presents two problems: First, it is a departure from our prior holdings and will create problems both for courts that seek to interpret this new standard and judges who seek to conform their behavior to this standard. Second, the proper remedy against a judge who in good faith, but erroneously, interprets the law is judicial review and not a collateral attack through West Virginia's Judicial Inquiry Commission.

For the foregoing reasons I cannot join the majority in either its results or its analysis.