**UNITED STATES ex rel. Clarence TYLER**

v.

**C. Murray HENDERSON, Warden, Louisiana State Penitentiary.**

**Misc. No. 1131.**

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Feb. 1, 1971.

Sylvia Roberts, Baton Rouge, for petitioner.

Jack P. F. Gremillion, Atty. Gen., Stacey Moak, Special Counsel, Baton Rouge, La., for respondent.

WEST, Chief Judge:

Petitioner, Clarence Tyler, was convicted of armed robbery in Mississippi in 1959. He had served approximately one month of the sentence imposed upon him for that offense in Mississippi when on July 13, 1959, he was released to North Carolina authorities to serve a sentence which had been imposed by that State for an offense, the nature of which the record does not reveal, prior to the one imposed by Mississippi. When he finished serving his sentence in North Carolina on October 7, 1965, he was met with a demand for extradition filed by the Mississippi authorities who sought custody of him for the purpose of making him serve the remainder of the sentence imposed upon him by Mississippi in 1959. Petitioner resisted extradition by filing an application with the State Court in North Carolina for a writ of habeas corpus. On October 11, 1965, a hearing was held in North Carolina and the writ was granted. Petitioner thus avoided extradition and was set free. Subsequently, upon being released by the North Carolina authorities, petitioner came to the State of Louisi-ana where he was later charged and convicted of simple burglary, for which crime he was sentenced to serve five years in the Louisiana State Penitentiary at Angola, Louisiana. He has now served that sentence but is once again faced with a new detainer filed by the Mississippi authorities with the State of Louisiana, who again seek custody of him for the purpose of making him serve the remainder of his 1959 sentence in Mississippi. Petitioner again resisted extradition, this time by filing an application for habeas corpus in the State Court in Louisiana. After hearing, that Court denied habeas corpus and on October 14, 1969, the Louisiana Supreme Court denied writs of certiorari, mandamus and prohibition. State ex rel. Tyler v. Henderson, 254 La. 791, 226 So.2d 921 (1969). Petitioner having thus exhausted available State Court remedies then filed the present application for habeas corpus in this Court, and on July 30, 1970, an order was issued herein to stay extradition proceedings pending further consideration by this Court.

The primary issue here centers around the effect of the habeas corpus proceeding held in North Carolina. The Superior Court of Halifax County, North Carolina, granted a writ of habeas corpus and subsequent discharge to petitioner based upon a finding that he had waived extradition from Mississippi and voluntarily returned to North Carolina because of an "understanding" that he would not be asked to return to Mississippi after serving his North Carolina prison sentence. The immediate effect of that ruling was simply a denial of the request by the State of Mississippi that the State of North Carolina return Clarence Tyler to Mississippi to serve the remainder of what Mississippi considered to be a valid sentence imposed upon him. Petitioner was then set free. But when he was later convicted of another crime and incarcerated in Louisiana, the State of Mississippi immediately filed another detainer with the Louisiana authorities. Petitioner resisted that detainer by fil-

ing an application for habeas corpus in the Louisiana State Court, seeking to have the detainer declared null and void. As succinctly stated by petitioner's counsel in her brief filed with this Court: "The issue then is simply whether or not the State of Mississippi can demand the return of Clarence Tyler on a detainer declared null by the North Carolina (sic), i. e. can the North Carolina judgment be denied full faith credit?"

After an evidentiary hearing, the State Court in Louisiana agreed with the contention of the respondent State of Louisiana and found as a matter of fact that the State of Mississippi had *not* shown a lack of interest in petitioner Tyler, and citing Shields v. Beto, 370 F.2d 1003 (C.A. 5–1967), Bilton v. Beto, 403 F.2d 664 (C.A. 5–1968), and McDonald v. United States, 403 F.2d 37 (C.A. 5–1968), as authority therefor, denied him habeas corpus relief. After that denial, petitioner filed the present application for habeas corpus in this Court, and the State of Louisiana takes the same position before this Court that it took before the State Court and also urges that this Court is limited in reviewing this matter to deciding "whether a crime has been committed in the demanding State, whether the fugitive in custody is the person charged, and whether the fugitive was in the demanding State at the time the alleged crime was committed * * *". The petitioner, on the other hand, contends that the North Carolina judgment is binding on both the Louisiana State Court and on this Court and should thus be accorded full faith and credit. He further asserts that the judgment of the North Carolina Court is res judicata and that thus the findings of the North Carolina Court are conclusive in this matter. Lastly, petitioner contends that extradition through the exercise of this detainer would subject him to double jeopardy and would also constitute a violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

The proceeding in the State Court in North Carolina was a habeas corpus proceeding to determine whether or not the detainer filed with that Court by Mississippi was sufficient to warrant North Carolina authorities detaining petitioner pending extradition proceedings. The North Carolina Court held that it was not. The proceeding presently before this Court, similar to the one previously filed in the Louisiana State Court, is also a habeas corpus proceeding to determine this time whether or not the detainer filed by Mississippi with the Louisiana authorities is sufficient to warrant the State of Louisiana detaining petitioner pending extradition proceedings. The Louisiana Court held that it is, and we agree with that finding.

■ It is well settled that the doctrine of res judicata has no place in habeas corpus proceedings, especially where there is reason to re-appraise either the facts or the law in order to do substantial justice. See Alford v. State of North Carolina, 405 F.2d 340 (C.A. 4), reversed on other grounds, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Certainly, Title 28, U.S.C.A. § 2244, as amended in November, 1966, does not prohibit a reconsideration of another similar application for habeas corpus when the Federal Court to which it is presented concludes that the ends of justice will better be served by such an inquiry. Section 2244 simply sets forth certain circumstances under which the Federal Court is not *required* to grant a new hearing. This proposition was long ago recognized and pronounced by the United States Supreme Court in Sanders v. United States, 373 U.S. 1, 16–17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), wherein the Court said:

"Even if the same ground was rejected on the merits on a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground. If factual issues are involved, the applicant is entitled

to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair; * * * If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application. * * * the foregoing enumeration is not intended to be exhaustive; the test is 'the ends of justice' and it cannot be too finely particularized."

We do not believe that the fact that *Alford* and *Sanders* happen to deal with cases where the writ was previously denied serves to limit the proposition therein stated to cases wherein the writ has been denied. The test is not whether the writ has previously been granted or denied, but rather how the ends of justice will best be served. The rule that the doctrine of res judicata has no place in habeas corpus proceedings applies equally to appropriate cases where a writ has been granted as well as those wherein a writ was denied. Thus, in a case such as the one now before us, we believe that there is no legal impediment to this Court considering fully, and de novo, on its merits, the petitioner's application for habeas corpus, even though a similar writ had been previously granted by another Court.

In this case, because of what we believe to be the North Carolina court's erroneous application of Mississippi law, petitioner was granted a writ of habeas corpus and thus permitted to avoid extradition from North Carolina. If the writ had at that time been denied, it is clear that the North Carolina decision would not be res judicata. Nor is there anything in the law or jurisprudence which we can find to indicate that it should be res judicata where the writ was granted. The question is simply whether or not the ends of justice will best be served by this Court giving full consideration, de novo, to the new application.

Generally, where an evidentiary hearing has been held in the State Court, and issues of fact have been resolved, the Federal Court, on a subsequent hearing of a similar application, will give great weight to the findings of fact made by the State Court even though it is not absolutely bound thereby. See Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Likewise, there can be no question that the Federal habeas court is not bound by the State Court's determination of the legal issues involved. And in Daniels v. Allen, 344 U.S. 443, 507–508, 73 S.Ct. 437, 446, 97 L.Ed. 469 (1953), a companion case to Brown v. Allen, Justice Frankfurter stated that:

"Where the ascertainment of the historical facts does not dispose of the claim but calls for interpretation of the legal significance of such facts, see Baumgartner v. United States, 322 U.S. 665, 670–671, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525, the District Judge *must* exercise his own judgment on this blend of facts and their legal values. Thus, so-called *mixed questions* or the application of constitutional principles to the facts as found leave the duty of adjudication with the federal judge.

\* \* \* \* \* \*

"\* \* \* Although there is no need for the federal judge, if he could, to shut his eyes to the State consideration of such issues, no binding weight is to be attached to the State determination * * *." (Emphasis added.)

A review of the record in this case reflects that in the North Carolina proceeding the State of Mississippi was represented only by a member of the North Carolina Attorney General's staff, and it is quite apparent, from a review of that record, that no one was present at that hearing who had sufficient familiarity with Mississippi law to protect the interest of that State. As a factual matter, the North Carolina court found

that the superintendent of the Mississippi State Penitentiary led the .petitioner to believe that if he voluntarily went to North Carolina to serve his sentence there, he would not be required to return to Mississippi to serve the remainder of his sentence in that State. But assuming such to be the fact, the question of the legal effect upon the State of Mississippi of such a representation is at issue. The North Carolina Court concluded that because of the representation made by the superintendent of the Mississippi State Penitentiary, petitioner was not a fugitive from justice in Mississippi. But of course, the real question at issue is whether or not the superintendent of the penitentiary in Mississippi had the authority to so bind the State of Mississippi. The North Carolina court apparently concluded that he did. We conclude that he did not. The superintendent of the penitentiary in Mississippi only has authority to "recommend" "to the Governor." He has no authority to commute a sentence or to make a binding agreement with a prisoner which would have the effect of commuting or reducing his sentence. See Miss.Code Ann. Title 28 §§ 7932, 7944. The "agreement" or representation made by the superintendent to petitioner could not, under Mississippi law, bind the State of Mississippi. Aside from this "agreement" which we conclude had no binding effect, there is no evidence to suggest that the State of Mississippi has ever relinquished its right to seek extradition of petitioner. Certainly there is no evidence that the State of Mississippi has shown a lack of interest in this petitioner. At the proper time they actually sought his extradition from North Carolina, and then, at the first opportunity, they again sought his extradition from Louisiana.

It is unfortunate if petitioner was misled by some irresponsible representation made by the superintendent of the penitentiary in Mississippi, but be that as it may, the State of Mississippi, under its law, is not bound by that representation.

■ This Court concludes, therefore, that (1) the judgment of the North Carolina court in the case which it had before it does not operate as res judicata in the present case; (2) to deny the writ in the present case does not constitute double jeopardy nor does it violate the due process clause of the Fourteenth Amendment to the United States Constitution, and (3) to deny the writ herein does not do violence to the full faith and credit clause of Article IV of the United States Constitution.

For these reasons, petitioner's application for a writ of habeas corpus will be denied and the order previously issued by this Court on June 30, 1970 staying further extradition proceedings will be recalled, rescinded and set aside. Judgment will be entered accordingly.