[661 NYS2d 403]

THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM N. SCHANK, Respondent, v JOSEPH GERACE, as Chautauqua County Sheriff, Appellant.

Fourth Department, July 3, 1997

382

## APPEARANCES OF COUNSEL

*James P. Subjack, District Attorney* of Chautauqua County, Mayville, for appellant.

*David Jay,* Buffalo, for respondent.

## OPINION OF THE COURT

DENMAN, P. J.

Relator, William N. Schank, commenced this proceeding pursuant to CPLR article 70 to test the legality of his detention pursuant to an extradition warrant signed by the Governor of this State, and to prevent his extradition to Alabama to serve a sentence of life imprisonment imposed on a 1975 conviction for murder. This is the fifth extradition request concerning relator and the fifth habeas corpus proceeding commenced by him in the 15 years since he was mistakenly released by Alabama prison authorities.

Respondent, the Chautauqua County Sheriff, appeals from a judgment of Supreme Court, which, like the four previous judgments of Chautauqua County Court, granted the habeas corpus petition and discharged relator from detention. Supreme Court held that County Court's determinations in the four prior extradition/habeas corpus proceedings were res judicata with respect to the instant proceeding. On appeal, respondent contends that res judicata generally does not apply to extradition proceedings and, given the particular circumstances of this case, does not bar the instant extradition request.

■ We conclude that res judicata does not bar the instant extradition request. The essential identity of issue is lacking because this proceeding involves a new issue concerning the legality of relator's detention pursuant to new process issued since the prior determinations were rendered. Further, as a result of County Court's persistent focus on immaterial issues, respondent has thus far been deprived of a full and fair opportunity to litigate the determinative issue of relator's fugitive status.

### BACKGROUND

In June 1975, relator was convicted in Alabama of first degree murder arising out of the fatal beating of a one-year-old girl and was sentenced to life imprisonment on that conviction. At the time, relator was serving a sentence imposed on an Alabama conviction for burglary. In October 1975, relator was convicted in Alabama of several counts of burglary and sentenced to 20 years imprisonment.

Despite being under a life sentence, relator was released by the Alabama Department of Corrections on August 21, 1982 upon the expiration of his sentence on the 1975 burglary conviction, taking into account "Inc[entive] Good Time." Rela-

tor asserts that Alabama officials released him according to law and with awareness of the murder conviction and life sentence, which relator claims he had completed. The record establishes, however, that relator was released as a result of administrative error, viz., the Alabama court's failure to send the transcript of the murder conviction to the Alabama Board of Corrections until August 24, 1982, three days after relator's release. Upon discovering the mistake, Alabama immediately sought relator's extradition from New York, where relator has lived since his release.

## THE LAW GOVERNING
### EXTRADITION OF FUGITIVES

Article IV (2, cl [2]) of the US Constitution provides: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." The purpose of the Extradition Clause is to enable each State to bring offenders quickly to justice by effectively erasing State borders so as to enlarge the territory within which the demanding State may make a lawful arrest, thus precluding any State from becoming a sanctuary for fugitives from the justice of another State (*Michigan v Doran*, 439 US 282, 287; *Biddinger v Commissioner of Police*, 245 US 128, 132-133). The constitutional provision is not self-executing, but is implemented by 18 USC § 3182, which provides: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear."

Extradition of fugitives is not a matter of comity among the States, but is the absolute right of the demanding State and

the absolute obligation of the rendering or asylum State (*see, Puerto Rico v Branstad*, 483 US 219, 226-228; *Appleyard v Massachusetts*, 203 US 222, 227-228). Federal law governs extradition, and State regulation merely supplements it (*Michigan v Doran, supra*, at 288; *Innes v Tobin*, 240 US 127, 131). Asylum States may not impose extradition requirements more stringent than those imposed by Federal law (*see, People ex rel. Matochik v Baker*, 306 NY 32, 36-37). Federal law is implemented by State procedural law, particularly the Uniform Criminal Extradition Act, which New York has adopted as CPL article 570.

CPL 570.06, entitled "Fugitives from justice; duty of governor", provides: "Subject to the provisions of this article, the provisions of the constitution of the United States controlling, and any and all acts of congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

CPL 570.08, entitled "Demand; form", provides in pertinent part: "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state * * * and accompanied by a copy of an indictment found or by information supported by an affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon, or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of the indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand" (*see also*, CPL 570.32).

Pursuant to CPL 570.10, 570.18, and 570.20, the Governor of the rendering State must review the extradition demand and, upon determining that it should be complied with, must issue a warrant directing that the accused be arrested and delivered

to agents of the demanding State. In that event, the arrestee has the right, pursuant to CPL 570.24, to be taken before the court and to apply for a writ of habeas corpus. In such circumstances, "A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met * * * Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive" (*Michigan v Doran, supra,* at 289; *see, People ex rel. Strachan v Colon,* 77 NY2d 499, 502).

Apart from the issues of the identity of the relator as the person charged and his presence in the demanding State at the time of the crime, the asylum State court may not inquire into the relator's guilt or innocence of the crime charged (*see,* CPL 570.46), but may determine only the legal question whether the demand for extradition is accompanied by a charge that, however inartfully, alleges commission of some crime in the demanding State (*see, California v Superior Ct.,* 482 US 400, 410-411; *Appleyard v Massachusetts, supra,* at 227). All other questions of guilt or innocence and the proper interpretation of the demanding State's substantive and procedural criminal law, including the technical sufficiency of the charges, are for the courts of the demanding State to determine (*see, California v Superior Ct., supra,* at 407-412; *Biddinger v Commissioner of Police, supra,* at 135; *People ex rel. Higley v Millspaw,* 281 NY 441, 445; *see also,* CPL 570.46).

In determining whether the relator is a fugitive, a court of the asylum State must consider that a fugitive from justice is " ' "a person who commits a crime within a state, and withdraws * * * from such jurisdiction without waiting to abide the consequences" ' " (*People ex rel. Strachan v Colon, supra,* at 502, quoting *People ex rel. Higley v Millspaw, supra,* at 446). "[T]he simple requirement is that the accused, having committed a crime in a demanding State, is present in an asylum State when a demanding State seeks to prosecute the offense" (*People ex rel. Strachan v Colon, supra,* at 502-503, citing *Roberts v Reilly,* 116 US 80, 97, and *People v Hinton,* 40 NY2d 345, 350). Although Federal and State statutes refer to the relator having "fled" from the demanding State (*see,* 18 USC § 3182; CPL 570.06, 570.08), "fled" simply means "left" (*see, Bassing v Cady,* 208 US 386, 392-393; *Appleyard v Mas-*

sachusetts, supra, at 229; Roberts v Reilly, supra, at 97; People ex rel. Strachan v Colon, supra, at 503). There is no connotation of escape, and it is immaterial what the relator believed when he left or whether his purpose was to avoid prosecution (see, Biddinger v Commissioner of Police, supra, at 133-134; Appleyard v Massachusetts, supra, at 227-228; People ex rel. Strachan v Colon, supra, at 502-503).

Similarly, under Federal and State law, it is immaterial to the status of the relator as a fugitive whether his absence from the demanding State or presence in the asylum State is voluntary or involuntary (see, Innes v Tobin, supra, at 133-135; Dunn v Hindman, 836 F Supp 750, 755-756; Anderson v Roth, 231 Ga 369, 370, 202 SE2d 91, 92; Evans v Rosenberger, 181 NW2d 152, 155 [Iowa]; Application of Robinson, 74 Nev 58, 61-62, 322 P2d 304, 306; State ex rel. Shapiro v Wall, 187 Minn 246, 249-250, 244 NW2d 811, 812-813). Nor does it matter that the relator left the demanding State with the knowledge or permission, or even at the insistence or procurement, of its officials (see, Bassing v Cady, supra, at 392-393; Chamberlain v Celeste, 729 F2d 1071, 1077; United States ex rel. Tyler v Henderson, 453 F2d 790, 793; Gee v State of Kansas, 912 F2d 414, 418-419). Additionally, it is immaterial whether the relator has long lived openly in the asylum State (see, People ex rel. Strachan v Colon, supra, at 503).

Significantly for the instant case, fugitive status is not dependent upon the relator's being sought to answer a pending or prospective criminal charge; extradition is available where the demanding State seeks to carry out the punishment of one who has been convicted and sentenced but whose sentence has not expired (see, CPL 570.08; Gottfried v Cronin, 192 Colo 25, 28-29, 555 P2d 969, 971-972; State ex rel. Sublett v Adams, 145 W Va 354, 361-362, 115 SE2d 158, 163, cert denied 366 US 933; Travis v People, 135 Colo 141, 308 P2d 997; Mathieu v Dupnik, 129 Ariz 322, 323, 630 P2d 1054, 1055 [Ariz App]; cf., People ex rel. Strachan v Colon, supra, at 502 [holding that a fugitive is one who commits a crime within a State and withdraws " ' "without waiting to abide the consequences" ' " (emphasis supplied)]). The charge survives the conviction and stands until the judgment is satisfied (see, Chamberlain v Celeste, supra, at 1075, citing Hughes v Pflanz, 138 F 980, 983; Wynsma v Leach, 189 Colo 59, 62, 536 P2d 817, 819; People ex rel. Brown v Jackson, 49 Ill 2d 209, 212, 274 NE2d 17, 18-19). Courts have held that one who has been convicted but has yet to serve his sentence nonetheless remains a "fugitive from justice" (18

USC § 3182; *see, Walden v Mosley,* 312 F Supp 855, 861-862; *State ex rel. Sublett v Adams, supra,* 145 W Va, at 361-362, 115 SE2d, at 163; *People ex rel. Mark v Toman,* 362 Ill 232, 234-235, 199 NE 124, 125), as well as a "person charged with crime in another state" (CPL 570.08; *see, Carpenter v Jamerson,* 69 Ohio St 2d 308, 312-313, 432 NE2d 177, 180-181; *Gottfried v Cronin, supra,* 192 Colo, at 29, 555 P2d, at 971-972; *see also, In re Hval,* 148 Vt 544, 546, 537 A2d 135, 137; *Hedge v Campbell,* 192 Kan 623, 628, 389 P2d 834, 838-839).

■ In those circumstances, the conviction is conclusive proof that the relator has been charged with a crime (*see, Walden v Mosley, supra,* at 861-862). Indeed, "[w]here the demand is based upon flight after a judgment of conviction, there would be no occasion for a legal issue to arise" with respect to the relator's fugitive status (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 570.08, at 173). For those reasons, and because an asylum State may not impose an extradition requirement not imposed by Federal law, the demanding State need not establish that the convicted individual has "escaped from confinement or has broken the terms of his bail, probation or parole," notwithstanding language in the Uniform Act ostensibly requiring such proof (CPL 570.08; *see,* CPL 570.32; *see also, Gottfried v Cronin, supra,* 192 Colo, at 28-29, 555 P2d, at 971-972; *Hedge v Campbell, supra,* 192 Kan, at 627, 389 P2d, at 838; *Commonwealth ex rel. Crist v Price,* 405 Pa 384, 389-390, 175 A2d 852, 855-856). Given the purposes of the Extradition Clause and the supremacy of Federal law, extradition of convicted individuals cannot logically or constitutionally be limited to those instances specified by the Uniform Act (*see, Hedge v Campbell, supra,* 192 Kan, at 627, 389 P2d, at 837-838). Moreover, such statutory language is "only meant to be illustrative, but not exhaustive, of the occasions when a convicted person can be considered to have fled from the justice of another state" (*Gottfried v Cronin, supra,* 192 Colo, at 29, 555 P2d, at 972; *accord, State ex rel. Martin v Boos,* 85 SD 484, 486-488, 186 NW2d 130, 131-132; *Hedge v Campbell, supra,* 192 Kan, at 627-629, 389 P2d, at 838-839; *Commonwealth ex rel. Crist v Price, supra,* 405 Pa, at 389-390, 175 A2d, at 855-856; *Matter of Simmans,* 54 Mich App 112, 117-118, 220 NW2d 311, 314). Thus, to establish the relator's fugitive status, it is sufficient for the demanding State to allege that the relator has been convicted in the demanding State but has not completed his sentence (*see, Gottfried v Cronin, supra,* 192 Colo, at 29, 555 P2d, at 972; *Application of Robinson, supra,* 74 Nev, at 62, 322

P2d, at 306). To refute that allegation, it is the burden of the relator to establish that he is not a fugitive by "clear and satisfactory" (*South Carolina v Bailey*, 289 US 412, 420-422) or "conclusive" evidence (*People ex rel. Higley v Millspaw, supra*, at 447).

### THE FIRST FOUR EXTRADITION/HABEAS CORPUS PROCEEDINGS

Within days of its mistaken release of relator, Alabama made the first of its five extradition requests. On August 25, 1982, relator was arrested in New York on a local criminal court warrant, which was issued based on information that relator was a fugitive and that a warrant for his arrest had been issued in Alabama. Relator applied for a writ of habeas corpus. County Court held that there could be no extradition of a person convicted in the demanding State absent proof that the convict had committed the crime of escape or violated his bail, probation, or parole. County Court held that relator's conduct would not constitute the crime of escape under New York law, that the mistaken yet unconditional release of relator from prison did not make him a fugitive, and that, because relator had been convicted of murder, he could not be extradited on a charge of murder. County Court granted habeas corpus relief and directed relator's release from custody.

That scenario, with some variations, was repeated three times between December 1982 and August 1993. On each occasion, relator was arrested on a different extradition warrant issued by the Governor of New York upon the demand of the Governor of Alabama. The second and third sets of extradition papers, like the first, recited that relator was a fugitive because he had been convicted of murder in Alabama, had been mistakenly released from prison prior to serving his life sentence, and was sought by Alabama for enforcement of the sentence. The fourth extradition request recited that relator had been indicted in Alabama for the crime of escape and was sought to answer that charge.

In each instance, relator applied for a writ of habeas corpus. In the second and third petitions, relator alleged that, having been convicted of murder, he was no longer the subject of a pending criminal charge, and that he had been released from prison without conditions or restrictions, had not escaped from confinement or fled from Alabama, and had lived openly in New York since his release. Relator argued that it was improper for Alabama to seek extradition in order to compel relator to serve his sentence. In the fourth petition, relator

challenged the sufficiency of the Alabama indictment charging him with escape, and additionally argued that the prior proceedings were res judicata.

In response to the second and third petitions, respondent contended that commission of a crime in and departure from the demanding State was sufficient to establish relator's fugitive status under Federal and State law, that one convicted in the demanding State is as much subject to extradition as one merely charged, that the state of mind of relator and the circumstances of his release were not relevant to his status as a fugitive, and that it was not necessary for Alabama to allege and prove his escape from confinement as a basis for extraditing him. In response to the fourth petition, respondent pointed out that the sufficiency and merits of the Alabama escape charge were for Alabama's courts to determine, and that the prior determinations were not res judicata because the fourth extradition request was based on a new underlying charge of escape.

In each instance, County Court granted habeas corpus relief and ordered relator discharged from custody. In its second decision, County Court reiterated that the statute required proof that relator had escaped from confinement. County Court found that relator had been unconditionally released and thus was not guilty of escape under Alabama law. In its third and fourth determinations, County Court held that the prior determinations were res judicata with respect to the renewed extradition proceedings.

No appeal was taken from the first and fourth judgments. Respondent filed notices of appeal from the second and third judgments, but those appeals were never perfected.

### THE INSTANT EXTRADITION/HABEAS CORPUS PROCEEDING

Alabama's fifth and current extradition demand was made by Governor James in May 1996. It was supported by an "Application for Extradition" in which an Alabama District Attorney averred that relator had been convicted and sentenced to life on a murder charge in 1975 but had "fled the State of Alabama prior to commencing the service of said life sentence," was now in New York, and hence was "a fugitive from justice in this State". The demand was also supported by proof of relator's 1975 murder conviction and life sentence, and an Alabama Board of Corrections "inmate summary" indicating that relator had been released from custody on completion of his sentence for burglary on August 21, 1982, before prison

authorities had received information concerning the murder conviction and life sentence.

Governor Pataki signed an arrest warrant in September 1996. The warrant recited that relator "is a fugitive from justice and stands convicted in [Alabama] of the crime of Murder in the First Degree, which the [Alabama] Governor certifies to be a crime under the Laws of said State, and is now needed for completion of sentence, and that the accused was present in said State at the time of the commission of the crime, and thereafter fled therefrom and has taken refuge in the State of New York". Relator was arrested on the warrant and petitioned for a writ of habeas corpus from Supreme Court. Relator alleged that he was "not a fugitive from justice" because he "was released from an Alabama prison sentence on its completion." Referring to the prior extradition/habeas corpus proceedings, relator argued that "principles of issue preclusion and claim preclusion require that the accompanying writ of habeas corpus be sustained."

In his return, respondent averred that relator had been mistakenly released from prison without having served his life sentence; that relator therefore was a fugitive; that the scope of the court's inquiry in extradition matters was narrow; that prior decisions by County Court had focused on immaterial issues; and that res judicata and collateral estoppel thus did not bar the instant extradition request.

Supreme Court heard argument only on the issues of res judicata and collateral estoppel. Respondent took the position that a judgment in an extradition proceeding was never final because extradition is merely a preliminary step analogous to arrest, and that therefore the prior determinations were not res judicata. Respondent argued that County Court had repeatedly misapprehended the determinative issue of relator's fugitive status, erroneously focusing on whether relator had escaped from prison, even before Alabama had charged relator with that crime. Respondent further argued that, in focusing on escape, County Court had not merely failed to address the determinative issue of fugitivity, but had acted without jurisdiction in determining relator's guilt or innocence under Alabama law. Respondent thus argued that he had not had a full and fair opportunity to litigate whether relator was a fugitive, i.e., whether he had committed a crime in Alabama, had left Alabama without having served his sentence, and was presently in New York.

Relator argued that respondent had had his day in court and that County Court had ruled on the issues of escape and fugi-

tivity. Conceding that one could be a fugitive if he "owe[d] time", relator implied that he no longer owed time, and thus could not be a fugitive, because he had been mistakenly released. Relator argued that the "interstate compact on extradition has a gap" inasmuch as it did not apply to convicted individuals released without probation or parole restrictions, that one could not be a fugitive without escaping, and that the habeas corpus application thus should be sustained and relator discharged.

Supreme Court found that relator had been convicted and sentenced to life imprisonment on a murder charge in 1975, but had been released in 1982 with no restrictions or conditions through administrative error; that Alabama previously had made four unsuccessful attempts to extradite relator; that respondent had failed to appeal County Court's prior judgments; that County Court had repeatedly held that extradition was not authorized; that each determination was made on the merits; that each prior proceeding involved the same facts and legal issues as the instant proceeding; and that none of the prior decisions was based on a procedural defect or lack of evidence. Supreme Court held that res judicata barred respondent's attempt "to relitigate the same issues with the same evidence as has already been litigated." Supreme Court therefore sustained the writ of habeas corpus and ordered relator discharged.

### APPLICATION OF RES JUDICATA
### AND COLLATERAL ESTOPPEL
### TO EXTRADITION PROCEEDINGS

There is a wealth of case law addressing application of the doctrines of res judicata—claim preclusion—and collateral estoppel—issue preclusion—to successive extradition proceedings. A number of Federal and State cases hold or suggest that res judicata and collateral estoppel never bar successive extradition requests (see, *United States v Levy*, 268 US 390, 393-394; *Matter of Extradition of McMullen*, 989 F2d 603, 612-613, *cert denied* 510 US 913; *Hooker v Klein*, 573 F2d 1360, 1365-1368, *cert denied* 439 US 932; *Castriotta v State*, 111 Nev 67, 68, 888 P2d 927, 928, *cert denied* — US —, 116 S Ct 54; *In re Moskaluk*, 156 Vt 294, 296-297, 591 A2d 95, 97; *State v Sandoval*, 95 NM 254, 256-257, 620 P2d 1279, 1281-1282; *In re Russell*, 12 Cal 3d 229, 233-235, 524 P2d 1295, 1297-1299; *Stone v State*, 85 Nev 60, 64-65, 450 P2d 136, 138-139).

In *Hooker* (*supra,* at 1368), for example, the court held that res judicata is "patent[ly] inapplicab[le]" to extradition orders, and that it is thus "wholly inappropriate to apply res judicata concepts to the findings resulting from extradition proceedings." "Consequently * * * where the government in good faith determines that extradition is warranted, it is not barred from pursuing multiple extradition requests irrespective of whether earlier requests were denied on the merits or on procedural grounds" (*Hooker v Klein, supra,* at 1366). In *Sandoval,* the court held: "Concepts of res judicata * * * and estoppel do not apply to extradition proceedings and are not within the purview of inquiry in an extradition proceeding" (*State v Sandoval, supra,* 95 NM, at 256, 620 P2d, at 1281). Similarly, in *Castriotta,* the court held "that an extradition proceeding is not res judicata as to subsequent proceedings" (*Castriotta v State, supra,* 111 Nev, at 68, 888 P2d, at 928, citing *Stone v State, supra,* and *In re Russell, supra*).

By comparison, those cases holding a subsequent extradition proceeding barred by a prior granting of habeas corpus relief are fewer, older, and generally less authoritative (*see, e.g., People ex rel. Chakouian v Hoy,* 17 Misc 2d 331, 333; *Palmer v Thompson,* 20 DC App 273; *Seigler v Canterbury,* 136 Colo 413, 416, 318 P2d 219, 220; *Stack v State ex rel. Kaye,* 333 So 2d 509, 510 [Fla App]; *Wells v Sheriff, Carter County,* 442 P2d 535, 538-539, 541 [Okla App]; *Ex parte Messina,* 233 Mo App 1234, 128 SW2d 1082).

The majority of cases addressing the issue purport to take a more balanced approach. As a rule, such cases hold, based on the particular circumstances at hand, that a prior granting of habeas corpus relief may not be invoked to bar a subsequent attempt to arrest, extradite, or prosecute relator on the same charges or for the same crime, while observing or implying that res judicata or collateral estoppel might be invoked in other and proper circumstances (*see, e.g., People ex rel. Harris v Mahoney,* 198 AD2d 466, *lv dismissed* 84 NY2d 839, *lv denied* 84 NY2d 1005; *Matter of McCrary v Scully,* 153 AD2d 629, 629-630; *People ex rel. Grant v Doherty,* 42 Misc 2d 239, 244-245, *revd on other grounds* 21 AD2d 829; *see also, Morse v United States,* 267 US 80, 85; *Collins v Loisel,* 262 US 426, 430; *Kearns v Keville,* 67 F2d 566, 567; *Desmond v Eggers,* 18 F2d 503, 506;

*In re White*, 45 F 237, 238-239; *United States ex rel. Tyler v Henderson*, 322 F Supp 142, 143-146, *affd* 453 F2d 790, *supra*).*

■ Whether the granting of habeas corpus relief in an extradition proceeding bars a subsequent attempt at extradition generally depends upon whether the court in the second proceeding is asked to pass upon the same matters as or matters different from those necessarily determined in the earlier proceeding (*see, Broughton v Griffin, supra*, 244 Ga, at 365-366, 260 SE2d, at 76; *Tucker v Shoemaker*, 190 Colo 267, 268, 546 P2d 951, 951-952; *Boyd v Van Cleave, supra*, 180 Colo, at 407, 505 P2d, at 1307; *Elliott v Johnson, supra*, at 337; *Stack v State ex rel. Kaye, supra*, at 510; *see generally*, Annotation, *Discharge on Habeas Corpus of One Held in Extradition Proceedings as Precluding Subsequent Extradition Proceedings*, 33 ALR3d 1443, 1444, § 2). Thus, a discharge in an earlier proceeding will bar a later proceeding only if the identical demand, issues, and evidence are involved in both proceedings (*see, State v Iowa Dist. Ct., supra*, at 53; *Cain v Moore, supra*, 182 Conn, at 474, 438 A2d, at 725 [Cotter, Ch. J., concurring]; *Harris v Massey, supra*, 241 Ga, at 581, 247 SE2d, at 56; *People ex rel. Ritholz v Sain, supra*, 26 Ill 2d, at 458-459, 187 NE2d, at 242-243; *Stack v State ex rel. Kaye, supra*, at 510), i.e., only in the absence of new, additional, or different law, theories, process, allegations, issues, facts, conditions, or proof (*see, Collins v Loisel, supra*, at 430; *Desmond v Eggers, supra*, at 506; *In re White, supra*, at 238-239; *State ex rel. Moore v Conrad, supra*, 179 W Va, at 579, 371 SE2d, at 76; *Morris v McGoff*, 728 P2d 720, 721 [Colo]; *Boyd v Van Cleave, supra*, 180 Colo, at 407, 505 P2d, at 1307; *Matter of Bebeau, supra*, at 580). The cases' strict insistence on identity

---

* (For a sampling of such cases from other States, *see, State v Van Buskirk*, 527 NW2d 922, 924-925 [SD]; *State v Iowa Dist. Ct.*, 500 NW2d 51, 53 [Iowa]; *State ex rel. Moore v Conrad*, 179 W Va 577, 579, 371 SE2d 74, 76; *In re Hval*, 148 Vt 544, 537 A2d 135, *supra*; *Garcia v Cooper*, 711 P2d 1255, 1257-1258 [Colo]; *Cain v Moore*, 182 Conn 470, 473-474, 438 A2d 723, 725, *cert denied* 454 US 844; *Broughton v Griffin*, 244 Ga 365, 365-366, 260 SE2d 75, 76; *Harris v Massey*, 241 Ga 580, 581, 247 SE2d 55, 56; *Application of McCullough v Darr*, 219 Kan 477, 483-484, 548 P2d 1245, 1250-1251; *In re Maldonado*, 364 Mass 359, 362-364, 304 NE2d 419, 421-423; *Boyd v Van Cleave*, 180 Colo 403, 407, 505 P2d 1305, 1307; *Matter of Bebeau*, 184 NW2d 577, 580-581 [ND]; *Hammond v State ex rel. Davis*, 244 Ark 186, 190, 424 SW2d 861, 863, *cert denied* 393 US 839; *People ex rel. Ritholz v Sain*, 26 Ill 2d 455, 458, 187 NE2d 241, 242, *cert denied sub nom. Ritholz v Ogilvie*, 374 US 807; *Ex parte Ray*, 215 Mich 156, 159, 183 NW 774, 775; *Matter of Aiello v State*, 166 Wis 2d 27, 31-32, 479 NW2d 178, 180 [Wis App], *review denied* 482 NW2d 105; *Elliott v Johnson*, 816 SW2d 332, 337 [Tenn App]; *Murphy v Boehm*, 443 So 2d 363, 366 [Fla App]; *State ex rel. Yarbrough v Snider*, 2 Ore App 97, 99-100, 465 P2d 739, 740-741; *Ex parte Barron*, 222 SW2d 241, 243 [Mo App]).

of issue makes clear that the doctrine applied by the cases is not res judicata, but a restrictive version of collateral estoppel. There is no authority for the proposition that a second extradition proceeding is barred on the ground that a claim could have been litigated in the earlier proceeding.

The cases thus reveal the doctrine's extremely "limited application in extradition proceedings" (*Boyd v Van Cleave, supra*, 180 Colo, at 406, 505 P2d, at 1307; *see also, Garcia v Cooper, supra*, at 1257-1258; *Tucker v Shoemaker, supra*, 190 Colo, at 268, 546 P2d, at 951-952). It has been repeatedly held that a prior dismissal or vacatur of extradition papers or granting of habeas corpus relief based on the government's delay, discontinuance, or failure to prosecute does not bar subsequent extradition proceedings (*see, e.g., People ex rel. Harris v Mahoney, supra*, at 467; *People ex rel. Keesee v Warden*, 51 AD2d 756, 757; *Kearns v Keville, supra*, at 567; *Debski v State*, 115 NH 673, 348 A2d 343; *Application of Robinson*, 74 Nev 58, 63, 322 P2d 304, 306-307, *supra*). Similarly, collateral estoppel does not apply where the granting of habeas corpus relief was based on insufficient or defective process or erroneous procedure in the extradition proceeding (*see, Kearns v Keville, supra*, at 567; *State v Iowa Dist. Ct., supra*, at 53-54; *Garcia v Cooper, supra*, at 1257-1258; *People ex rel. Ritholz v Sain, supra*, 26 Ill 2d, at 459, 187 NE2d, at 243). That is true even where the prior dismissal of the extradition proceeding was "with prejudice" (*see, e.g., State v Van Buskirk, supra*, at 925; *State v Sandoval, supra*, 95 NM, at 255, 620 P2d, at 1280; *Commonwealth ex rel. Douglass v Aytch*, 225 Pa Super 195, 199-200, 310 A2d 313, 315). In those circumstances, the State is free to correct the defect in the process and commence an extradition proceeding anew (*see,* CPL 570.48; *State v Van Buskirk, supra*, at 925; *In re Moskaluk, supra*, 156 Vt, at 296, 591 A2d, at 96-97; *People v Coyle*, 654 P2d 815, 817-818 [Colo]; *Cain v Moore, supra*, 182 Conn, at 473-474, 438 A2d, at 725; *Harris v Massey, supra*, 241 Ga, at 581-582, 247 SE2d, at 56-57; *Application of McCullough v Darr, supra*, 219 Kan, at 483-484, 548 P2d, at 1250-1251; *cf.,* CPLR 7012). Indeed, the issuance of new process, or even the mere amendment of the former process, automatically defeats application of collateral estoppel, for the reason that the prior granting of habeas corpus relief dealt only with the sufficiency of the former process, not the sufficiency of the new or amended process or the legality of the new detention (*see, Morse v United States, supra*, at 82-83; *Collins v Loisel, supra*, at 430; *In re White, supra*, at 239; *Tucker v Shoemaker, supra*, 190 Colo, at

268-269, 546 P2d, at 952; *Matter of Bebeau, supra,* at 580-581; *State ex rel. Sublett v Adams, supra,* 145 W Va, at 363, 115 SE2d, at 164; *People ex rel. Mark v Toman, supra,* 362 Ill, at 236-237, 199 NE, at 126; *State ex rel. Shapiro v Wall, supra,* 187 Minn, at 251-252, 244 NW2d, at 813; *Ex parte Barron, supra,* at 242-243; *People ex rel. Grant v Doherty, supra,* 42 Misc 2d, at 244-245; *cf.,* CPLR 7012). That analysis is implicitly followed in cases that dismiss appeals in extradition proceedings on the ground that the issuance of new process has rendered moot any challenges to the former process *(see, e.g., People ex rel. McKinnon v Infante,* 108 AD2d 1026, 1027, *lv denied* 64 NY2d 612).

Numerous cases hold that a discharge from custody based on lack of proof will not be accorded preclusive effect where the People seek to rectify the deficiency and support a subsequent extradition request by adducing new or additional evidence concerning relator's identity or presence in the demanding State at the time of the crime *(see, Morse v United States, supra,* at 85; *Hooker v Klein, supra,* at 1368; *Desmond v Eggers, supra,* at 506; *State ex rel. Moore v Conrad, supra,* 179 W Va, at 579, 371 SE2d, at 76; *Stone v State, supra,* 85 Nev, at 64-65, 450 P2d, at 138; *Hammond v State ex rel. Davis, supra,* 244 Ark, at 190, 424 SW2d, at 863; *Elliott v Johnson, supra,* at 337). New allegations or proof will be entertained even where the facts were known at the time of the prior proceeding *(In re Moskaluk, supra,* 156 Vt, at 296-297, 591 A2d, at 97; *In re Maldonado, supra,* 364 Mass, at 361, 304 NE2d, at 421). Further, the demanding State is not constrained to adduce new or different evidence, but may seek to "make a more persuasive showing on the basis of the same evidence" *(Hooker v Klein, supra,* at 1368).

Moreover, several courts have permitted subsequent extradition proceedings based in part on an express or implied assessment that the court that initially granted habeas corpus relief did so upon an erroneous legal basis, such as improper consideration of immaterial issues *(see, e.g., United States ex rel. Tyler v Henderson, supra,* 322 F Supp, at 145-146, *affd* 453 F2d 790; *State ex rel. Sublett v Adams, supra,* 145 W Va, at 362-363, 115 SE2d, at 163-164; *Application of Kimler,* 37 Cal 2d 568, 571-572, 233 P2d 902, 905, *cert denied* 342 US 898).

In our view, the foregoing cases establish exceptions that virtually nullify the doctrine of collateral estoppel in extradition cases *(see, In re Maldonado, supra,* 364 Mass, at 363, 304 NE2d, at 422 [observing that, for purposes of applying res

judicata, any analogy between extradition proceedings and ordinary civil cases is "quite strained"]; *see also, People v Goodman*, 69 NY2d 32, 37 [observing that collateral estoppel does not apply to civil and criminal litigation "in quite the same way," because the preeminent concern in criminal cases is to reach the correct result, whereas the focus in civil cases is on the "swift, impartial and peaceful resolution of disputes"]). Thus, to the limited extent that courts apply collateral estoppel in extradition cases, they do so only in a very restricted manner that renders the doctrine almost unrecognizable. The rule to be distilled from the foregoing cases is that a prior granting of habeas corpus relief in an extradition proceeding will not bar a subsequent extradition proceeding founded on new process nor will it preclude reappraisal of any factual or legal issues previously determined.

■ Important policy reasons support that approach to extradition proceedings. While collateral estoppel is based on important policies, the doctrine must yield to the paramount policy of not granting permanent asylum to accused or convicted criminals merely because prior extradition proceedings have failed on the basis of technical, procedural, or evidentiary deficiencies, or because of misapprehension or misapplication of the law. Moreover, the doctrine of collateral estoppel is judicially created, has no constitutional underpinnings, and must yield to the constitutional imperatives underlying the Extradition Clause (*see, Hooker v Klein, supra*, at 1368; *In re Russell, supra*, 12 Cal 3d, at 234, 524 P2d, at 1298). Further, although a habeas corpus proceeding results in a judgment, the judgment is not considered final and "on the merits" on the question of relator's guilt or innocence (*see, Hooker v Klein, supra*, at 1367-1368; *see also, Morse v United States, supra*, at 84-85), nor even with respect to the validity of the demanding State's exercise of the right to extradition (*see, Collins v Loisel, supra*, at 430; *Hooker v Klein, supra*, at 1367-1368; *State v Iowa Dist. Ct., supra*, at 54; *In re Hval, supra*, 148 Vt, at 548, 537 A2d, at 138; *Application of Kimler, supra*, 37 Cal 2d, at 570-571, 233 P2d, at 904). Extradition is merely a preliminary step in securing the presence of a defendant in a court in which he may lawfully be tried (*see, State v Van Buskirk, supra*, at 925; *In re Russell; supra*, 12 Cal 3d, at 233, 524 P2d, at 1298; *People ex rel. Ritholz v Sain, supra*, 26 Ill 2d, at 457, 187 NE2d, at 242, quoting *Matter of Strauss*, 197 US 324, 333). As such, extradition is analogous to arrest (*see, Matter of Strauss, supra*, at 333; *State v Van Buskirk, supra*, at 925;

*People ex rel. Ritholz v Sain, supra*, 26 Ill 2d, at 457, 187 NE2d, at 242), while a habeas corpus proceeding, the exclusive vehicle for challenging an extradition request, is akin to a preliminary or probable cause hearing (*see, United States v Levy, supra*, at 393; *Hooker v Klein, supra*, at 1367; *State v Iowa Dist. Ct., supra*, at 54; *In re Maldonado, supra*, 364 Mass, at 363, 304 NE2d, at 422; *Hammond v State ex rel. Davis, supra*, 244 Ark, at 190, 424 SW2d, at 863; *People ex rel. Mark v Toman, supra*, 362 Ill, at 236-237, 199 NE, at 126). " 'It is not the policy of our criminal jurisprudence that an accused shall be permitted to escape trial on the merits of the charge against him, through a mere defect in the preliminary proceedings leading up to the trial' " (*Morse v United States, supra*, at 84-85, quoting *Benson v Palmer*, 31 DC App 561, 568). Likewise, it would be improvident and unjust to accord preclusive effect to a prior extradition determination where the effect would be to insulate relator from criminal prosecution in the demanding State (*see, In re Russell, supra*, 12 Cal 3d, at 232-234, 524 P2d, at 1296-1298, citing *United States v Levy, supra*, at 393).

### COLLATERAL ESTOPPEL DOES NOT BAR THE
### INSTANT EXTRADITION PROCEEDING

■ Applying the foregoing principles, we conclude that the court erred in sustaining the writ and ordering relator released from custody on the ground of res judicata. The instant proceeding does not involve the identical issues and evidence as in the prior proceedings. First, each extradition proceeding was commenced by different process, and thus each of the challenged detentions, including the most recent one, had a different basis. The initial detention was based on a local criminal court warrant; each subsequent detention was based on a different Governor's warrant. The issuance of new process by itself results in a lack of identity of issue, precludes application of the doctrine of collateral estoppel, and requires the court to determine whether relator is lawfully in custody pursuant to that new instrument.

Moreover, identity of issue is lacking as a result of County Court's persistent failure to focus on those issues material to the determination whether relator was lawfully in custody. In these circumstances, in which relator has not contested his identity as the person charged with and convicted of murder in

Alabama in 1975, the sole material issue is whether relator is a fugitive. As set out hereinabove, a fugitive is one who has been charged with the commission of a crime in the demanding State, was present in the demanding State at the time of the crime, and is currently found in the asylum State. The fact that relator has been convicted of the underlying crime does not nullify the charge, nor is it relevant whether relator left the demanding State with the intent or purpose of avoiding prosecution or punishment. The circumstances surrounding relator's release from prison are also irrelevant, as is whether relator escaped.

Given the lack of identity of issue, the instant extradition request is not barred by collateral estoppel. "In properly seeking to deny a litigant two 'days in court', courts must be careful not to deprive him of one" (*Matter of Reilly v Reid*, 45 NY2d 24, 28, citing *Commissioners of State Ins. Fund v Low*, 3 NY2d 590, 595). The court has never passed on the sole material issue whether relator committed a crime in Alabama and is now sought by Alabama for enforcement of his sentence. Respondent has not had a full and fair opportunity to litigate the material issue of relator's fugitive status, or the legality of his most recent detention pursuant to new process. Respondent therefore is not precluded from establishing that status within the context of this proceeding.

■ We reject any challenge to the sufficiency of the extradition documents, which are in order and meet the requirements of the statute. Moreover, relator has had repeated opportunities to challenge his fugitive status upon legitimate considerations, and has failed to do so. He does not contest that he is the person named in the extradition request, that he was convicted of murder in Alabama in 1975, or that he subsequently left Alabama and is presently in New York. Although relator asserts that he had fully served his sentence when released by Alabama in 1982, that contention is belied by the record. In any event, it is for Alabama, as the demanding State, to determine whether and to what extent relator's sentence remains unsatisfied under Alabama's law (*see, United States ex rel. Tyler v Henderson*, 453 F2d, *supra*, at 794 [Morgan, J., concurring]).

Accordingly, the judgment should be reversed and the petition dismissed.

GREEN, DOERR, BALIO and FALLON, JJ., concur.

Judgment unanimously reversed, on the law, without costs, and petition dismissed.