**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Antwyn D. Gibbs,
Petitioner Below, Petitioner

vs.)  No. 20-0478 (Fayette County 17-C-329)

Donnie Ames, Superintendent,
Mt. Olive Correctional Complex
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner Antwyn D. Gibbs, by counsel Evan J. Dove, appeals the March 10, 2020, order of the Circuit Court of Fayette County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent of Mount Olive Correctional Complex, by counsel Patrick Morrisey and Benjamin F. Yancey III, filed a response in support of the circuit court's order.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In the early morning hours of January 9, 2015, multiple intruders entered the Oak Hill, West Virginia, home of Edward and Linda Knight. Two of the intruders were armed; one held a shotgun and the other held a pistol. Edward Knight, Linda Knight, and her three grandchildren— her five-year-old granddaughter, her eighteen-year-old disabled grandson, and Andrew Gunn— were held at gun point. The intruders located a safe in Andrew Gunn's room and tossed it out a bedroom window along with a crossbow and two pairs of athletic shoes. The intruders then left

---

[1] In the three weeks after respondent filed the response, petitioner, without the assistance of his counsel, submitted three different handwritten documents to the Court: "Petitioner's Objection Brief of Respondent," "Add to respondent to petitioner's Brief," and "Petitioner brief to Add in objection to respondent's Brief for error." Rule 4(b) of the Rules of Appellate Procedure prohibits "[a] party to an action before this Court who is represented by counsel [from] fil[ing] any pro se documents in that action with the Court . . . unless specifically permitted to do so by order." Because petitioner is represented by counsel and because petitioner did not receive permission to file his three handwritten documents, those documents will not be considered by the Court.

the home and fled with the stolen items. Linda Knight immediately reported the incident to the Oak Hill police.

Soon after the police began their investigation, they received a tip that Kentrell Goodman and Kevin Goodman Jr. were possibly involved in the home invasion and that the Goodmans lived in or near Newberry, South Carolina. Officers from Oak Hill traveled to Newberry, and, with the help of Newberry police, investigated the matter further. Pursuant to a search warrant executed on January 14, 2015, the police searched the home in which Kentrell Goodman resided, discovering the stolen crossbow, shoes, and safe. The police took statements from Kentrell Goodman and Rashod Wicker, who also lived in the home. Through their statements, the men implicated themselves, Kevin Goodman Jr., Radee Hill, and petitioner in the Oak Hill home invasion. Kentrell Goodman told police that after returning to South Carolina, the group went to petitioner's home, which was where they gained entry to the safe by shooting it.

At approximately 10:37 a.m. on January 15, 2015, police arrived at petitioner's home where he lived with his brother and his mother. Officers surrounded the residence. Officer Garrett Lominack of the Newberry County Sheriff's Office approached the door, and when petitioner's mother answered the door, Officer Lominack and other officers entered the home and arrested petitioner. Thereafter, officers conducted a security sweep of the interior of the residence, observing, among other things, a silver handgun and shotgun shells. Meanwhile, at the rear of the residence, officers observed plastic pieces on the ground and two spent .410 gauge shotgun shell casings near the plastic pieces. While police were at the home, petitioner's brother arrived and gave police permission to search his (the brother's) bedroom. The silver handgun and some shotgun shells were located in the brother's bedroom.

Investigator Michael Stribble of the Newberry County Sheriff's Office obtained a search warrant to search petitioner's home at 11:41 a.m. on January 15, 2015. The search warrant was executed less than an hour later at 12:30 p.m. In executing the search warrant, the Newberry police seized, among other things, petitioner's cell phone, the silver handgun, the plastic pieces found at the rear of petitioner's home, shotgun shells from multiple locations inside the home, and the spent shotgun shell casings found at the rear of the home.

The day after petitioner had been taken into custody, Investigator Stribble obtained and executed an arrest warrant for petitioner's arrest as a fugitive from justice. The warrant stated, "Hold fig. max 20 days Gov. Ofc." Petitioner was ultimately extradited to West Virginia.

In May of 2015, petitioner was indicted in Fayette County, West Virginia, for the felony offenses of first-degree robbery, entry of a dwelling, grand larceny, and conspiracy. Kevin Goodman Jr. and Radee Hill were also indicted on these charges, and all three men were tried together in a three-day jury trial. At trial, the State presented the testimony of eleven witnesses—including the testimony of the Knights, Andrew Gunn, several police officers, a toolmark examiner with the West Virginia State Police lab, Kentrell Goodman, and Rashod Wicker—and numerous exhibits.

Kentrell Goodman testified that he had attended high school with Andrew Gunn in Oak Hill and that the two had been friends. He explained that he knew Andrew Gunn kept a safe in his

bedroom containing approximately $10,000. Kentrell Goodman testified that after he told his brother, Kevin Goodman Jr., about the money, he, Kevin Goodman Jr., Rashod Wicker, Radee Hill, and petitioner drove from South Carolina to Oak Hill to forcibly take the money from Andrew Gunn. According to Kentrell Goodman, Rashod Wicker was enlisted to drive the group to Oak Hill because Rashod Wicker had a driver's license. Kentrell Goodman testified that, upon arriving in Oak Hill, the vehicle was parked near a Domino's restaurant and he, Kevin Goodman Jr., Radee Hill, and petitioner proceeded to the Knights' home, ultimately taking Andrew Gunn's safe, a crossbow, and shoes. Kentrell Goodman further testified that, upon arriving back in Newberry, the group proceeded to the rear of petitioner's home where Kevin Goodman Jr. fired a shotgun at the safe at least twice to gain access to the safe and the money inside. Kentrell Goodman claimed he received a portion of the money from the safe. He admitted that he had entered a guilty plea to first-degree robbery in exchange for the dismissal of the remaining charges against him, but he testified that he had not received any deals or promises in exchange for his testimony. Kentrell Goodman had not been sentenced when he gave his testimony.

Rashod Wicker testified that he was recruited to drive Kentrell Goodman, Kevin Goodman Jr., Radee Hill, and petitioner from South Carolina to Oak Hill. He claimed he remained with the vehicle near a Domino's restaurant while the other four men acquired the safe, crossbow, and shoes from the Knights' home. He testified that immediately upon returning to South Carolina, the group dropped him off at his mother's house before proceeding elsewhere. He further testified that the next time he saw the safe was the following day and that by that point, the safe had been opened, and he had been given a portion of the money from the safe by Kentrell Goodman. Like Kentrell Goodman, Rashod Wicker testified that he had entered a guilty plea to first-degree robbery in exchange for the dismissal of the remainder of the charges against him. Rashod Wicker claimed that the plea was not conditioned on his agreement to testify against petitioner, Kevin Goodman Jr. and Radee Hill. Rashod Wicker had not been sentenced when he gave his testimony.

Regarding the arrest of petitioner, Officer Lominack testified, "Once we entered the home, -- well, his mother answered the door, told us that [petitioner] was on the couch. He was on a couch in the living room area in the front of the trailer." Officer Stephen Epps of the Newberry County Sheriff's Office was asked, "And were you there [at petitioner's home] -- were you there with an arrest warrant initially?" Officer Epps testified, "Initially, no."

Regarding the search of petitioner's home, the following discussion took place during the State's questioning of Officer Epps:

> Q. [the State's counsel, Brian Parsons]     In your -- in your search of [petitioner's] residence, in your search of --
>
> MR. THOMPSON [Petitioner's trial counsel]: I'm going to object. There's been no foundation laid with regard to a search warrant. This other evidence has been on the outside of the house, as I understand it, and there's been no evidence of a search warrant.
>
> THE COURT: Well, there's been some testimony that the man was inside the house looking around. Whether he had a search warrant or had permission or

3

what -- I don't know what his authorization for being in there was, but there has already been testimony he was in the house looking around. So, you know, --

MR. THOMPSON: I can cover --

THE COURT: And I don't know that I have jurisdiction over this county in South Carolina as to whether or not the search was authorized or not, so --

MR. THOMPSON: I can cover it on cross.

THE COURT: All right. Go ahead, Mr. Parsons.

The silver handgun, the plastic pieces found at the rear of petitioner's home, the shotgun shells located inside petitioner's home, and the spent shell casings found at the rear of the home were all entered into evidence during the trial. The State presented expert testimony through the West Virginia State Police Lab's toolmark examiner establishing that at least some of the plastic pieces recovered from petitioner's backyard were part of the stolen safe. The State also introduced into evidence petitioner's cell phone and an extraction report of the cell phone. Officer Mason Hines of the Oak Hill Police Department testified that, on the morning of the home invasion, petitioner's cell phone "pinged" cell phone towers in Max Meadows, Virginia; Flat Top, West Virginia; and Oak Hill, West Virginia.

Petitioner testified in his own defense at trial, denying any involvement in the crimes. Petitioner claimed that his cell phone was missing on the date of the crimes and that he recovered the phone from Rashod Wicker on or about January 12, 2015. Kevin Goodman Jr. and Radee Hill also testified in their own defense, denying involvement in the Oak Hill home invasion. After the defendants all rested their cases, each made a motion for judgment of acquittal. In denying the motions, the trial court said:

> Well, the evidence from the State is the evidence from the State, and credibility issues of the defendants, who all testified in this matter, and their witnesses are all issues for the jury.
> If the jury believes these three gentlemen that they were never here in West Virginia and didn't participate, then they get a free ride back to South Carolina.
> However, there is evidence in this case that the jury may not believe their testimony and could find them guilty, depending upon what the jury believes, of the four charges set out in this indictment. Those are credibility assessments that a jury must make.
> Again, I agree that the evidence against [Radee] Hill is weaker than the evidence against [petitioner] and [Kevin] Goodman [Jr.] That evidence, if believed by the jury, appears much stronger on those two individuals than Mr. Hill.
> It appears that the evidence shows that Mr. Hill was just brought along, if the jury believes the testimony, as muscle in this thing, much like [petitioner] was brought along as muscle by [Kevin] Goodman [Jr.], who appears to be the prime perpetrator, based upon the testimony, if the jury believes it. And I don't know whether they will or not, but that's up to them.

4

The jury found each of the three defendants—petitioner, Kevin Goodman Jr., and Radee Hill—guilty of first-degree robbery, entry of a dwelling, and conspiracy.[2] Petitioner was sentenced to terms of incarceration of one to five years for conspiracy, which was enhanced to two to five years in light of his recidivist conviction; one to ten years for entry of a dwelling; and fifty years for first-degree robbery.

Following sentencing, petitioner appealed his conviction. *See State v. Gibbs*, 238 W. Va. 646, 797 S.E.2d 623 (2017). On appeal, he argued that the trial court had committed reversible error by denying his motion to sever his trial from that of his co-defendants and that the evidence was insufficient to convict him of robbery. *See id.* at 653, 656, 797 S.E.2d at 630, 633. Finding no merit to either argument, this Court affirmed his conviction. *See id.* at 654-55, 658-59, 661, 797 S.E.2d at 631-32, 635-36, 638.

Petitioner, without the assistance of counsel, filed a petition for a writ of habeas corpus in the circuit court. That petition was summarily denied, and petitioner did not appeal that decision.

Subsequently, petitioner filed a second petition for a writ of habeas corpus in the circuit court. Counsel was appointed to represent petitioner, and thereafter, with the assistance of counsel, petitioner filed an amended omnibus habeas corpus petition ("amended petition") and a *Losh* list.[3] In the amended petition, petitioner alleged that the search and seizure of his home on January 15, 2015, was illegal and that the admission of evidence collected pursuant to that illegal search violated his constitutional rights; that his arrest was illegal and infringed upon his Fourth Amendment rights; that his due process rights were violated when he was extradited from South Carolina to West Virginia; and that the cumulative effect of numerous errors resulted in the violation of petitioner's constitutional rights and denied him a fair trial.[4]

An omnibus hearing was held on August 28, 2019, during which petitioner argued an additional ground for relief that he did not present in his amended petition: that the circuit court lacked personal jurisdiction over him on the basis that his extradition proceedings were unconstitutional. Six witnesses, including petitioner, testified at the omnibus hearing. Regarding the arrest of petitioner, Officer James Pack of the Oak Hill Police Department testified as follows when questioned by counsel for respondent:

> Q    So just to make sure I have this straight Detective; it is your understanding that the arrest warrant was issued here [in Fayette County, West

---

[2] The grand larceny charges against each of the three defendants were dismissed.

[3] *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

[4] Petitioner also raised the following grounds in his amended petition: ineffective assistance of counsel of trial and appellate counsel, defects in indictment, refusal to subpoena witnesses, instructions to the jury, sufficiency of the evidence, actual innocence, newly discovered evidence, and insufficient instructions.

5

Virginia,] then the Petitioner was placed in NCIC[5] and based on that South Carolina made an arrest of him. Is that your understanding?

      A      Yes, sir.

(footnote added).

Regarding the entry and search of petitioner's home, petitioner testified, "I was in the front room and my mother was at the door and my mother answered the door and they just came in and arrested me with drawn guns . . . ." Petitioner further testified, "When my mother opened the door, she didn't open it all the way. She answered the door halfway and then they just walked in, and then they seen me because I was just getting off the couch when they opened the door." Petitioner's mother testified that she did not give the police permission to search her home. Petitioner's appellate counsel testified:

> There was the issue of the absence of the search warrant. And I had mentioned to [petitioner] that I thought that that was a habeas issue; because [petitioner's trial counsel] had not had a suppression hearing, on the acts of the -- on the fact that there hadn't been a search warrant.
>    . . . I think that is one that I should have included in the direct appeal because it wasn't simply a question that [petitioner's trial counsel] had not convened the hearing on the search warrant. There is more to it than that.
>    . . . [I]t would now be a question of whether there was error by the trial court in addressing it or not properly addressing it and that would have made it an issue for direct appeal.
>    So, as far as that -- yes, I should have included that on direct appeal, and I did not.

Petitioner was questioned by the circuit court concerning the events occurring after he was taken into police custody:

> THE COURT: [Petitioner], in January of 2015, when the police came to your home there, at any time thereafter, do you recall being arrested on a Fugitive from Justice Warrant?

> WITNESS [petitioner]: I didn't get the Fugitive from Justice Warrant until I went to court to sign my extradition hearing and then my PO [probation officer] violated me for this crime and then they charged me with a fugitive from justice.

> THE COURT: All right. And at any time after you were arrested on the Fugitive from Justice Warrant did you go before a Magistrate or JP or a Judge of any kind?

---

[5] "NCIC" refers to the National Crime Information Center. *See United States v. Martinez-Jimenez*, 464 F.3d 1205, 1207 (10th Cir. 2006). It is "a nation-wide law enforcement communications system." *State v. Foddrell*, 171 W. Va. 54, 56, 297 S.E.2d 829, 831 (1982).

6

WITNESS: No, sir.

THE COURT: Did you sign any kind of document that -- consenting to come back to the State of West Virginia?

WITNESS: No, sir.

THE COURT: All right. Did you -- on the day that the officer came to South Carolina and brought you back to West Virginia, prior to him arriving, [were] you aware that he was coming that day?

WITNESS: No, sir.

Petitioner went on to testify that he was held in South Carolina for about two months or forty-five days before he was transported to West Virginia. He claimed he was not provided with access to counsel during that time and that he signed a paper requesting an extradition hearing but that no such hearing was held. He denied signing any paper waiving his right to an extradition hearing. On the subject of petitioner's extradition, his habeas counsel told the circuit court:

> [I]n regard to my own research into this matter, I called down to Little Mountain Magistrate Court in South Carolina and I also called the circuit or their version of Circuit Court down there. In fact, I had them index their entire court record and there is nothing, no paperwork, nothing period that I can find. I even talked to the Magistrate, and I preface this by stating that I may be testifying here, but would be willing to. I talked to the Magistrate, Judge Johnson, and he informed me that they had never had an extradition hearing and he more likely than not would have waived it, but we don't have the paperwork to prove that he waived it.

After the omnibus hearing, respondent sought to supplement the record with a series of documents. Those documents included a Waiver of Extradition signed by petitioner, certifying that petitioner was brought before Magistrate Judge Johnson in Newberry County, South Carolina, on February 20, 2015, and waived the issuance and service of a Warrant of Extradition. Also included was a requisition request sent by the Governor of West Virginia to the Governor of South Carolina for the issuance of a Governor's Rendition Warrant and the return of petitioner to West Virginia. In his response to respondent's request to supplement, petitioner advised the circuit court that he did not waive his right to an extradition hearing and that "he specifically remembers signing a document to have his extradition hearing after being told that he needed to sign a paper for such a hearing to take place." Petitioner called the legitimacy of the Waiver of Extradition into question. The circuit court permitted respondent to supplement the record with the documents, finding that they were not necessary to fully adjudicate petitioner's claims but that they were relevant to establishing petitioner's credibility.

Upon considering the record in the case, all associated matters, the parties' arguments, and the evidence presented at the omnibus hearing, the circuit court entered an eighty-one-page order on March 10, 2020, denying and dismissing the amended petition. With regard to petitioner's claim

7

that his arrest and extradition were unlawful, depriving the circuit court of jurisdiction, the circuit court cited Syllabus Point 5 of *State v. Moss*, 180 W. Va. 363, 376 S.E.2d 569 (1988), and said, "Under both federal and state law, the unlawfulness of arrest and propriety or even absence of extradition proceedings are not subject to review once an individual has been brought from the asylum state into the jurisdiction of the demanding state." Relying on Syllabus Point 5 of *State ex rel. Sublett v. Adams*, 145 W. Va. 354, 115 S.E.2d 158 (1960), the circuit court went on to state:

> [O]nce a conviction is obtained in the demanding state, a Petitioner cannot utilize a writ of habeas corpus to seek release from a valid conviction and sentence based upon the unlawfulness of his initial custody and invalidity of the extradition proceedings, as any error or impropriety in and of itself, in those instances, does not lend to, or detract from, the constitutional validity of the subsequent conviction and sentence.

Accordingly, the circuit court concluded that petitioner's claims regarding "irregularities of his arrest or improprieties in the underlying extradition proceedings are not appropriate for habeas review." However, the circuit court then went on to address the merit of the claims and petitioner's credibility, finding that petitioner had not provided the court "with any material proof that casts doubt on the validity of Petitioner's underlying initial arrest and extradition" and finding that petitioner's testimony at the omnibus hearing concerning his extradition was not credible.

Regarding petitioner's claim that the trial court erred by admitting the evidence seized from petitioner's home at petitioner's trial, the circuit court found, "After conducting an initial cursory sweep for weapons and other potentially armed suspects and/or individuals, Newberry County Sheriff's Deputies secured the scene and obtained a valid search warrant for the premises." The circuit court reasoned that the security sweep was justified under the circumstances, explaining:

> The underlying crime was a violent armed robbery with multiple perpetrators. Petitioner had previously been convicted of the felony offense of robbery and, at the time law enforcement entered the home, Petitioner was an actively supervised parolee from Trenton Correctional Institution. Moreover, while it is clear that Wicker and Kentrell Goodman had been arrested the previous day, co-defendant, Kevin Goodman, Jr., had not been arrested, and it is unclear whether Hill had been arrested at the time of Petitioner's arrest. Based upon these facts alone, it is clear that officer and public safety, the potential for evasion and flight from custody, and/or destruction of evidence were all reasonably of significant concern to the officers.

The circuit court determined that "Petitioner fell woefully short of establishing that a Fourth Amendment violation occurred[,] and it was therefore unnecessary to actually address application of the exclusionary rule." The circuit court went on to state, however, that pursuant to *State v. Farley*, 230 W. Va. 193, 737 S.E.2d 90 (2012), and Syllabus Point 3 of *State v. Flippo*, 212 W. Va. 560, 575 S.E.2d 170 (2002), the evidence seized from petitioner's home would have all been subject to various exceptions to the exclusionary rule and therefore admissible at petitioner's trial. The circuit court also said, "[W]hile the record before this [c]ourt is silent as to the specifics of Petitioner's underlying felony parole supervision, the [c]ourt is aware that signed consents to

search are also regularly made a part, and condition, of such release and supervision."

Finally, with regard to petitioner's claim concerning cumulative error, the circuit court stated that "[t]he cumulative error doctrine is only applicable when the record reveals that there are at least *some* errors. Further, where the errors are insignificant and inconsequential, reversal is not warranted." (Footnote omitted). The circuit court determined that petitioner "1) raised claims that Petitioner did not support by the presentation of any material evidence; 2) asserted frivolous claims grounded in innuendo and speculation; and 3) presented false and questionable testimony to support claims." The circuit court concluded that

> where error was found or presumed, the same was inconsequential and insignificant and not of sufficient magnitude, even when combined, to have sufficiently impacted the fairness of Petitioner's trial or otherwise violated those rights and protections afforded an accused by both the West Virginia Constitution and the United States Constitution.

Petitioner now appeals the circuit court's March 10, 2020, order. He asserts three assignments of error: (1) that the circuit court abused its discretion in ruling that the petitioner's claims stemming from his initial arrest and extradition proceedings were not appropriate for habeas review; (2) that the circuit court abused its discretion in ruling that petitioner was not entitled to habeas relief on his claim that illegally obtained evidence was improperly admitted at his trial; and (3) that the circuit court abused its discretion in ruling that cumulative error during his trial was of an insufficient magnitude to have affected the fairness of his trial. We apply the following standard of review to petitioner's claims:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016).

In support of his first assignment of error, petitioner contends that the circuit court should have, but failed to, review the facts of his arrest, incarceration, and extradition. According to petitioner, the facts show that prior to allegedly signing the waiver of extradition, he was not granted counsel in violation of his right to the same. He further asserts that the only witnesses to the supposed signing of the wavier of extradition were parties seeking to incarcerate him and that it is undisputed that he requested an extradition hearing and challenged extradition. Petitioner maintains that the irregularities present in his extradition to West Virginia are the type that the Sixth Amendment and the Due Process clauses of the West Virginia and United States Constitutions are meant to protect against. He also argues that the circuit court's reliance on *Moss* is misplaced because the asylum state in that case—Ohio—is a member state of the Uniform Criminal Extradition Act while the asylum state in his case—South Carolina—is not.

We find no merit to petitioner's argument. Our decision in *State v. Flint*, 171 W. Va. 676, 301 S.E.2d 765 (1983), is directly on point. In *Flint*, appellant Richard Flint "took, at gunpoint, a certain sum of money from Otis Kinder . . . and then fatally wounded Kinder." 171 W. Va. at 679, 301 S.E.2d at 769. Appellant was apprehended by police in Nevada and extradited to West Virginia where he was tried and convicted of Kinder's murder. *Id.* at 680, 301 S.E.2d at 769. Thereafter, appellant was tried and convicted of the murder of a second individual. *Id.* Appellant appealed the second murder conviction to the Court, arguing, among other things, that the murder charge should have been dismissed "because he was extradited from Nevada to West Virginia without benefit of counsel." *Id.* at 683, 301 S.E.2d at 772.

In rejecting appellant's argument, the *Flint* court recognized:

In interstate extradition proceedings, the prisoner is held under the extradition process only until such time as he reaches the jurisdiction of the demanding state, and is thenceforth held under the process issued out of the courts of that state. Consequently, the regularity of extradition proceedings may be attacked only in the asylum state; after an alleged fugitive has been delivered into the jurisdiction of the demanding state, the proceedings may not be challenged.

*Id.* at 683, 301 S.E.2d at 772 (quoting 31 Am. Jur. 2d *Extradition* § 74 (1967)). The *Flint* court also acknowledged a prior holding in *State ex rel. Sublett*, wherein the Court held:

A person who is returned in any manner from one state to another may either be tried for a crime committed in the state to which he is returned, or be required to serve a sentence for a crime for which he has been found guilty in the state to which returned, and the method of his return, even though illegal or forcible, does not invalidate his conviction or constitute ground for his release from the penitentiary, under the due process clause of the Fourteenth Amendment.

*State ex rel. Sublett*, 145 W. Va. at 554, 115 S.E.2d at 158, Syl. Pt. 5. Based on this authority, the *Flint* court held, "Once a fugitive has been brought within the jurisdiction of West Virginia as the demanding state, the propriety of the extradition proceedings which occurred in the asylum state may not be challenged. The extradition proceedings may be challenged only in the asylum state." 171 W. Va. at 678, 301 S.E.2d at 767, Syl. Pt. 4. Applying its new Syllabus Point to appellant's case, the *Flint* court concluded that appellant's contention that he was entitled to the dismissal of the murder charge because he was extradited without the benefit of counsel lacked merit. *Id.* at 683, 301 S.E.2d at 772.

Our decision in *Flint* establishes that, regardless of whether there are irregularities in the extradition of an individual from an asylum state to West Virginia, once the individual has been brought to West Virginia, extradition proceedings in the asylum state may not be challenged in West Virginia. Despite petitioner's contention that this law, which was applied in *Moss*, does not apply to jurisdictions that are not members of the Uniform Criminal Extradition Act, the Court has carved no such exception. Consequently, even assuming petitioner's factual allegations concerning irregularities in his extradition from South Carolina to West Virginia are true, petitioner cannot

obtain habeas corpus relief on the basis of those irregularities. Therefore, we conclude that the circuit court did not abuse its discretion in denying petitioner's amended petition on this ground.

In his discussion of his second assignment of error, petitioner asserts that the police conducted an illegal search of his home, seizing evidence that was ultimately admitted at petitioner's trial. He claims that the trial court should have applied the exclusionary rule to this evidence and excluded it from his trial. He further argues that, despite the circuit court's finding to the contrary, no exceptions to the exclusionary rule, including the doctrine of inevitable discovery, applied in his case. According to petitioner, "illegally obtained evidence was admitted over his trial counsel's objection at trial, and it was an abuse of discretion when the [circuit] court summarily denied him habeas relief on said substantive grounds." He argues that for this Court "to leave [the circuit court's] decision undisturbed would ultimately subject the Petitioner to a violation of his constitutional right against unreasonable searches and seizures, pursuant to the Fourth Amendment of the Constitution of the United States, and Article III, § 6 of the Constitution of West Virginia."

In this instance, we need not delve too deeply into petitioner's arguments. Under our law, "'[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.' Syl. Pt. 5, *State* [*ex rel. Grob*] *v. Blair*, 158 W. Va. 647, 648, 214 S.E.2d 330, 331 (1975)." Syl. Pt. 11, *State v. Barefield*, 240 W. Va. 587, 814 S.E.2d 250 (2018). Moreover, "'[e]rrors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction.' Syl. pt. 20, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974)." Syl. Pt. 3, *Ballard v. Hunt*, 235 W. Va. 100, 772 S.E.2d 199 (2015). Even if illegally seized evidence was admitted against him at his trial, and even if the admission of such evidence at his trial resulted in the deprivation of a constitutional right, we find that petitioner cannot prevail because, under the facts of this case, any such error was harmless beyond a reasonable doubt.

Both Kentrell Goodman and Rashod Wicker testified that petitioner was involved in the crimes, and their description of petitioner's involvement in the crimes was consistent. Physical evidence obtained from their home—evidence that is not challenged in this appeal—corroborated portions of their testimony. Neither man received any promises from the State in exchange for testifying against petitioner, and there is nothing in the trial transcript that might explain why both men would fabricate the fact of petitioner's involvement. Further, petitioner testified in his own defense, and the jury had the opportunity to weigh his credibility against the credibility of both Kentrell Goodman and Rashod Wicker. As the trial court rightfully observed, the credibility of petitioner, Kevin Goodman Jr., and Radee Hill was an issue for the jury. Finally, had the complained-of evidence not been admitted, petitioner's situation at trial would have been like that of Radee Hill. The trial court alluded to the lack of physical evidence connecting Radee Hill to the crimes and noted that the evidence against Radee Hill was weaker than the evidence against his co-defendants; however, despite the weaker case against Radee Hill, the jury ultimately concluded that Kentrell Goodman and Rashod Wicker were the more reliable witnesses and convicted Radee Hill. There is no reason to believe that had the complained-of evidence not been admitted, petitioner would not have been convicted on the testimony of Kentrell Goodman and Rashod Wicker. Thus, any error in the admission of the evidence seized from petitioner's home was

harmless beyond a reasonable doubt. Accordingly, we conclude that the circuit court did not abuse its discretion in denying petitioner's amended petition on this ground.

Lastly, we consider petitioner's third assignment of error: that the circuit court abused its discretion in ruling that "where the [circuit] court found or presumed error in regard to the Petitioner's trial, said errors were not of sufficient magnitude to apply the cumulative error doctrine and grant the Petitioner habeas relief." Petitioner claims that "to leave [the circuit court's] decision undisturbed would ultimately subject the Petitioner to a violation of his constitutional right of due process, pursuant to the Fourteenth of the Constitution of the United States, and Article III, § 10 of the Constitution of Amendment West Virginia."

On the issue of cumulative error, this Court has held:

> "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syllabus point 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972).

Syl. Pt. 7, *State v. Tyler G.*, 236 W. Va. 152, 778 S.E.2d 601 (2015). With regard to establishing error, we have held that "[o]n an appeal to this Court *the appellant bears the burden of showing that there was error* in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973) (emphasis added).

In making his cumulative error claim, petitioner fails to enunciate the specific errors to which he believes the cumulative error doctrine should be applied in this instance. Instead, he states that "it is certain he was deprived of several of his constitutional rights," and he highlights what he deems are three "key facts." First, he states that he "was arrested and his home was searched by police when they knew they did not have a warrant for either action." Second, he avers that he "did not have the benefit of counsel for over forty-five days (45) following his arrest." Third, he asserts that "every piece of evidence that was collected from the Petitioner's home and person [was] admitted against him at trial, over trial counsel's objection, without the State ever having to meet or explain a single exclusionary rule exception to their warrantless activities." According to petitioner, these three "key facts" gave the State "advantage after advantage through his proceedings." Petitioner concludes by stating, "For these aforementioned reasons, and for all of those certain grounds previously raised by the Petitioner in his [amended petition], his accompanying *Losh* list, and at his [omnibus] hearing, the Petitioner submits that the cumulative effect of numerous errors resulted in a violation of his right to due process and a fair trial."

With regard to each of petitioner's "key facts," he has failed to explain how each one is related to an error occurring during his trial. His key facts are not accompanied by citation to applicable law or any legal analysis, other than quoting our holding in *Smith* as set forth in *Tyler G.* above and citing to *State v. Wilfred H.*, No. 17-0170, 2018 WL 3005947 (W. Va. June 15, 2018) (memorandum decision), for the proposition that the cumulative error doctrine should be used sparingly. Even assuming petitioner's recitation of the facts is fully supported by the appendix

record, petitioner has not provided this Court with adequate information to determine whether there was any error in the proceedings below associated with those facts or how any such error denied him the right to a fair trial.[6]

Similarly, regarding petitioner's reference to "all those grounds previously raised" in the amended petition, the *Losh* list, and the omnibus hearing, he does not identify the points of fact or law upon which he relies to establish errors occurred, nor does he cite to any legal authority specifically addressing any such alleged error. He also fails to provide specific citations to the appendix record pinpointing when and how any such alleged errors were presented to the circuit court.

Rule 10(c)(7) of the Rules of Appellate Procedure requires more of a petitioner for this Court to consider a claim. That rule provides:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

*Id.* Additionally, we have repeatedly recognized that "[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health and Human Res. ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

> Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal. *State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal").

*State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 622 (1996).

Petitioner's cumulative error claim is, at best, "skeletal," and is nothing more than a simple assertion that he was denied the right to a fair trial. As such, petitioner has not preserved this claim for consideration in this appeal, and we will not consider it.

---

[6] To the extent that petitioner may be arguing that the error he has alleged in his first two assignments of error constitute cumulative error, that argument must fail. For the reasons set forth above, we find no error with regard to petitioner's first assignment of error. Further, regarding petitioner's second assignment of error, we have determined that if any error existed, that error was harmless beyond a reasonable doubt.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 13, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISSENTING:**

Justice John A. Hutchison
Justice William R. Wooton


Wooton, Justice, joined by Hutchison, Justice, dissenting:

I dissent to the majority's resolution of this case via memorandum decision. I would have set this case for oral argument to thoroughly address Petitioner's argument that the trial court erroneously admitted physical evidence obtained during an illegal search of Petitioner's home. Rather than addressing this error on appeal, the majority concludes that the admission of this potentially illegally obtained evidence was harmless error. In reaching this conclusion the majority infers the jury would have convicted Petitioner without this evidence because two co-perpetrators testified that Petitioner was involved in the crimes at issue and *legally* obtained evidence from their homes corroborated their testimony. Further, the majority contends that Petitioner would likely have been in the same position as one of his co-defendants, Radee Hill, who the jury convicted on weaker evidence overall and without the admission of the complained-of evidence here.

Even assuming, arguendo, the majority is correct that the admission of this evidence constituted harmless error, we have held that "'[e]rrors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction.' Syl. pt. 20, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974)" Syl. Pt. 3, *Ballard v. Hunt*, 235 W. Va. 100, 772 S.E.2d 199 (2015). Having reviewed the parties' briefs and the issues raised therein, I believe that formal consideration of this matter and a signed opinion were warranted to fully address whether there was "no reasonable possibility" the admission of this evidence contributed to Petitioner's conviction. Accordingly, I respectfully dissent.

14